NATIONAL TREASURY EMPLOYEES
UNION, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 84–1493.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 1985.

Decided Oct. 11, 1985.

Elaine D. Kaplan, with whom Lois G. Williams, Washington, D.C., was on brief, for petitioner. Sharyn Danch and Greg O'Duden, Washington, D.C., also entered appearances for petitioner.

Jill A. Griffin, Atty. Federal Labor Relations Authority, Washington, D.C., with whom Ruth E. Peters, Sol. and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before WALD, EDWARDS and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge.

National Treasury Employees Union (NTEU) seeks reversal of a decision of the Federal Labor Relations Authority (FLRA)[1] dismissing an unfair labor practice complaint filed against the Bureau of Government Financial Operations of the Department of Treasury (the Bureau). The FLRA found that the Bureau did not commit an unfair labor practice when it failed to provide NTEU with notice and an opportunity to be present at an interview by the Bureau of a bargaining unit employee scheduled to testify on behalf of another employee at a hearing before the Merit Systems Protection Board (MSPB). For the reasons set forth herein, we find the FLRA's conclusion arbitrary, capricious and contrary to law.

## I. BACKGROUND

NTEU's complaint arises out of the following facts. On December 20, 1980, James Lewis, an employee of the Bureau of Government Financial Operations, witnessed an altercation between Philip Murphy, a second Bureau employee, and his supervisor. Murphy lost his job as the result of this altercation and appealed this removal to the MSPB. Murphy designated NTEU to represent him at the MSPB hearing. NTEU also served as the exclusive representative of the bargaining unit to which Lewis and Murphy belonged.

In preparation for the MSPB hearing, John Maus, the attorney representing the Bureau of Government Financial Operations, interviewed Lewis, who was to appear at the MSPB hearing as a witness for Murphy. Also present at the interview were Robert Johnson and Harold Howard, two labor relations specialists who were serving as co-counsel to the Bureau at the MSPB hearing. Prior to the interview, Maus directed Johnson to contact Lewis and tell him to report to Johnson's office where Maus, Johnson and Howard had already assembled. Lewis left his work area and reported to the office of the labor relations specialist. Then, in a twenty to thirty minute interview, Maus questioned Lewis extensively about the incident between Murphy and his supervisor. Maus took notes of Lewis' responses and later typed up these notes. The Bureau did not notify NTEU of the interview or give NTEU an opportunity to be present at the interview.

NTEU filed an unfair labor practice charge[2] asserting that as the exclusive representative of the bargaining unit employees, it had a statutory right under § 7114(a)(2)(A) of the Federal Service Labor-Management Relations Statute to be present at the Bureau's interview of Lewis. Section 7114(a)(2)(A) provides:

> An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—
>
> > (A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment. . . .

5 U.S.C. § 7114(a)(2)(A).[3] The Administrative Law Judge (ALJ) concluded that the

---

**1.** *Bureau of Gov't Fin. Operations, Headquarters and National Treasury Employees Union,* 15 F.L.R.A. 423 (1984). The FLRA issued an earlier decision in this case in 13 F.L.R.A. 27 (1983). NTEU sought review of that decision in this court in *National Treasury Employees Union v. Federal Labor Relations Auth.,* No. 83–2180. On July 27, 1984, this court granted the FLRA's unopposed motion to remand the case to permit the FLRA to issue a supplemental decision and order. NTEU now appeals the FLRA's supplemental decision.

**2.** 5 U.S.C. § 7116(a)(8) makes it an unfair labor practice for an agency to "fail or refuse to comply with any provision of this chapter." NTEU contends that the Bureau committed an unfair labor practice when it refused to comply with § 7114(a)(2)(A) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7114(a)(2)(A).

**3.** For an exclusive representative to have the right to be represented at a discussion between a representative of the agency and a bargaining unit employee, each of the elements set forth in § 7114(a)(2)(A) must be found to exist. There must be a discussion, which is formal in nature, between one or more agency representatives

interview of Lewis constituted a formal discussion under 5 U.S.C. § 7114(a)(2)(A) because the meeting was called by management, held away from Lewis' work area in the office of a labor relations specialist, and marked by the taking of notes by a high level agency representative. Accordingly, the ALJ found that NTEU did have a statutory right to be represented at the interview. The FLRA reversed the ALJ's determination, finding that NTEU had no right to representation because the discussion was neither "formal" nor concerned "any grievance or any personnel policy or practices or other general condition of employment."

The FLRA first determined that the subject matter of the interview did not concern a "grievance" as that term is used in § 7114(a)(2)(A), reasoning that the term grievance did not encompass Murphy's appeal to the MSPB. It next concluded that the interview did not concern any "personnel policy or practices" because this phrase in § 7114(a)(2)(A) refers only to general rules applicable to all agency personnel, not to individualized applications of such rules. Finally, the FLRA found that the interview was not "formal" because the three interviewers were not in Lewis' chain of supervision and had no direct supervisory or managerial responsibilities over Lewis.

NTEU filed a petition for review in this court, arguing that the interview concerned both a grievance and a personnel policy or practice and that the interview was sufficiently "formal." We agree that the FLRA's interpretation of "grievance" misconstrues the statute. We also find that the FLRA's determination that the discussion was not a formal one lacks substantial evidence on the record and is contrary to the FLRA's own precedent. These conclusions mandate a reversal of the FLRA's decision not to find an unfair labor practice. Accordingly, we remand the case to the FLRA so that it may issue an appropriate remedial order directing the Bureau to cease and desist from its unfair labor practice.

## II. ANALYSIS

### A. The Meaning of "Grievance"

The Federal Service Labor-Management Relations Statute (FLMR), 5 U.S.C. §§ 7101–7135 (1982), regulates the methods by which an employee member of a bargaining unit represented by an exclusive union representative may challenge adverse personnel decisions by his federal employer. If the challenged matter falls within the coverage of a "negotiated grievance procedure" provided for by the collective bargaining agreement between the agency and the union, that grievance procedure provides the sole mechanism for resolving the disputed matter with two exceptions. See 5 U.S.C. § 7121.[4] Where the

---

and one or more bargaining unit employees, and that discussion must concern a grievance or a personnel policy or practice or other general condition of employment.

4.  5 U.S.C. § 7121 provides:

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

(b) Any negotiated grievance procedure referred to in subsection (a) of this section shall—

(1) be fair and simple,

(2) provide for expeditious processing, and

(3) include procedures that—

(A) assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;

(B) assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and

(C) provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitra-

action complained of falls within the coverage of the negotiated grievance procedure but also constitutes a complaint of discrimination on the basis of race, color, religion, sex, national origin, age, handicapping condition, marital status or political affiliation, the employee may elect to pursue the matter through either the collective grievance procedure or the statutory procedures for employment discrimination suits. *See* 5 U.S.C. § 7121(d). Similarly, where the employee challenges a permanent or temporary reduction in grade or removal for unacceptable performance governed by 5 U.S.C. § 4303 or 5 U.S.C. § 7512, then the matter may, in the discretion of the employee, be raised either under the procedures of 5 U.S.C. § 7701 providing for an appeal to the MSPB or under the negotiated grievance procedure. *See* 5 U.S.C. § 7121(e).

Philip Murphy contested his removal from his job through the appellate procedure of 5 U.S.C. § 7701. The FLRA concluded that Murphy's dispute did not constitute a "grievance" as that term is used in the FLMR because Murphy pursued the dispute under 5 U.S.C. § 7701 rather than under a negotiated grievance procedure.[5] Thus, in the FLRA's view, the Bureau's interview of James Lewis concerned a statutory appeal rather than a "grievance" and NTEU, as the exclusive representative, had no right under § 7114(a)(2)(A) to be represented at the interview.

■ We find the FLRA's construction of "grievance" to be contrary to the plain language of the statute. Section 7103 of the FLMR defines a grievance as follows:

(a) For the purpose of this chapter—

(9) "grievance" means any complaint—

(A) by any employee concerning any matter relating to the employment of the employee....

> tion which may be invoked by either the exclusive representative or the agency.
>
> . . . . . .
>
> (d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.... Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.
>
> (e)(1) Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the ne-

> gotiated grievance procedure, but not both....
>
> (2) In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, an arbitrator shall be governed by section 7701(c)(1) of this title, as applicable.
>
> (f) In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures.

5. The FLRA did not consider, and the record does not reveal, whether Murphy had the option to raise his claim under a negotiated grievance procedure. 5 U.S.C. § 7121(b) permits a union and an agency employer to exclude any matter from the scope of a negotiated grievance procedure. Nothing in the record tells whether the NTEU–Bureau collective bargaining agreement provided for just cause terminations.

Nothing in this definition restricts a "grievance" to matters raised through a negotiated procedure. Murphy appealed to the MSPB contending that the Bureau improperly fired him because his conduct did not rise to a level of *unacceptable* job performance as required for removal of a federal employee by 5 U.S.C. § 4303. Murphy's appeal to the MSPB thus meets the statutory definition of a grievance as an employee "complaint" concerning a "matter relating to [his] employment."

■ Section 7114 guarantees NTEU, as the exclusive representative, the right to be represented at any formal discussion between an employee and an agency representative concerning Murphy's grievance.[6] That Murphy's grievance challenges an individualized discharge for alleged insubordination does not alter NTEU's right of representation. While the FLRA may be correct in its assertion that the phrase "any personnel policy or practices" in § 7114 is limited to those discussions which concern conditions of employment affecting unit employees generally,[7] the term "grievance" in § 7114 is not similarly restricted. In the sectional analysis of the "Udall Substitute" which eventually became the present § 7114, Representative Udall explained:

> By inserting the word "general" before "conditions of employment," the substitute limits the right of representation to

those formal discussions (*other than grievance discussions*) which concern conditions of employment affecting employees in the unit generally.[8]

A grievance discussion, unlike a discussion of a personnel policy or practice, may involve a particularized application of a personnel policy to an employee.

The FLRA points to § 7121 of the FLMR and to its legislative history to support its contention that the term grievance in § 7114(a)(2)(A) refers only to grievances actually pursued under a negotiated grievance procedure and not to complaints pursued through other statutory procedures. The FLRA's argument, as we understand it, is as follows. In the FLMR, Congress has provided that a negotiated grievance procedure generally will be the exclusive procedure for resolving those disputes which fall within its coverage. 5 U.S.C. § 7121(a). However, in § 7121(d) and (e) of the FLMR, Congress created two exceptions to this exclusive coverage. Congress thereby ensured that any employee suffering a prohibited form of discrimination under 5 U.S.C. § 2302(b)(1)[9] or challenging serious disciplinary measures imposed for unacceptable job performance could avoid the collective grievance procedure and seek relief under certain alternative statutory procedures, including an appeal to the

---

**6.** It has not been argued that a management representative can engage in a formal discussion concerning a "grievance" under § 7114(a)(2)(A) only with the employee who has suffered the grievance. The FLRA has never restricted the term "grievance" in § 7114(a)(2)(A) to a discussion with the particular employee who has the grievance.

**7.** Because § 7114(a)(2)(A) is written in the disjunctive—the subject of the formal discussion must concern a "grievance *or* any personnel policy, etc."—our determination that the discussion concerned a grievance means that this court need not address that portion of the FLRA's decision concluding that the discussion did not concern a personnel policy or practice.

**8.** 124 Cong.Rec. 29,184 (1978) (emphasis supplied).

**9.** 5 U.S.C. § 2302(b) provides:
Any employee who has authority to take, direct others to take, recommend, or approve

any personnel action, shall not, with respect to such authority—
(1) discriminate for or against any employee or applicant for employment—
  (A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16);
  (B) on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);
  (C) on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d));
  (D) on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or
  (E) on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation. . . .

MSPB. While § 7121(b)(3) of the FLMR requires that an employee must either be his own representative or select the union as his representative when pursuing a negotiated grievance procedure, § 7114(a)(5)(A) of the FLMR guarantees that an employee seeking relief through a procedure other than the negotiated grievance procedure need not be represented by the union.[10] By permitting an employee to select his own representative when pursuing relief outside the negotiated grievance procedures, Congress must have intended to exclude the union from any right of inclusion in the statutory alternatives to the negotiated grievance procedure guaranteed in § 7121(d) and (e). Consequently, the union on its own behalf should have no right of representation when an employee and an agency representative discuss the subject matter of a dispute pursued through these alternative statutory procedures. To support this reading of the FLMR, the FLRA relies on a statement in the House Report that

> It should be noted that, although this subsection [§ 7103(a)(9)] is virtually all-inclusive in defining "grievance," section 7121 excludes certain grievances from being processed under a negotiated grievance procedure, thereby limiting the net effect of the term.[11]

In light of the structure of § 7121, which requires an employee to choose between two overlapping remedies, we read this sentence from the House Report not as a statement scaling back the rights of an exclusive representative to be represented at formal discussions concerning grievances but rather as a guarantee that an agency employer will not be forced to defend its challenged conduct in both a statutory procedure and a negotiated grievance procedure. Absent some more positive indication that Congress in fact meant in all circumstances to exclude the union from any formal discussion of matters raised in the alternative statutory procedures guaranteed in § 7121(d) and (e), we reject the FLRA's attempt to read the distinctions drawn in § 7121 back into the original definition of grievance provided in § 7103(a)(9). Such a reading of "grievance" strains the language of the statute at every turn. For example, if the term "grievance" referred only to disputes pursued through negotiated grievance procedures, § 7121(d) and (e) would not be worded to require an *"aggrieved employee"* (emphasis supplied) to elect to pursue a remedy under either a negotiated procedure or a statutory procedure. An "aggrieved employee"—*i.e.*, one with a grievance—would by definition necessarily pursue his grievance under a negotiated procedure. Likewise, to read "grievance" as the FLRA attempts to do would render self-contradictory § 7121(a)(1) which provides that *"Except* as provided in subsections (d) and (e) of this section, the procedures [provided by a collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage" (emphasis supplied). Section 7121(a)(1) says that the statutory procedures referred to in § 7121(d) and (e)

---

**10.** Section 7114(a)(5)(A) is phrased as an exception to 5 U.S.C. § 7114(a)(1) which entitles an exclusive representative to "act for, and negotiate collective bargaining agreements covering, all employees in the unit." 5 U.S.C. § 7114(a)(5) provides:

> The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude an employee from—
> (A) being represented by an attorney or other representative, other than the exclusive representative, of the employee's own choosing in any grievance or appeal action; or
> (B) exercising grievance or appellate rights established by law, rule, or regulation;

except in the case of grievance or appeal procedures negotiated under this chapter (emphasis supplied).
See also 124 Cong.Rec. 38,715 (1978) (statement of Rep. Ford):

> As agreed upon by the conferees, section 7114(a)(5)(A) gives employees the right to be represented by a person other than the exclusive representative unless a grievance procedure has been negotiated. Under section 7121(b)(3), an employee must either be his own representative or select the exclusive representative when a negotiated grievance procedure is in effect.

**11.** H.R.Rep. No. 1403, 95th Cong., 2d Sess. 40 (1978).

are also procedures for resolving *grievances.*

Nor can the FLRA rely on legislative history to pare down the definition of grievance contained in § 7103(a)(9). The only plausible reading of the sentence in the House Report quoted above is that § 7121 ensures that some *grievances* cannot be processed under a negotiated procedure. The House Report merely indicates that the "all-inclusive" definition of "grievance" in § 7103(a)(9) and § 7114(a)(2)(A) is broader than the "effect" of the term under § 7121. Congress was compelled to limit the "effect" of the term grievance in § 7121 precisely because the broad definition of the term would otherwise include grievances brought under a statutory procedure as well as those brought under a negotiated grievance procedure.

Our interpretation of the term "grievance" may differ from that of the Ninth Circuit in *Internal Revenue Service, Fresno Service Center, Fresno, California v. Federal Labor Relations Authority,* 706 F.2d 1019 (9th Cir.1983). There the Court of Appeals held that 5 U.S.C. § 7114(a)(2)(A) does not guarantee a union the right to representation at an Equal Employment Opportunity precomplaint conciliation conference. The Ninth Circuit's decision appears to us to be based primarily on its conclusion that the precomplaint conference did not constitute a "formal" discussion. *See* 706 F.2d at 1023–24. To the extent, however, that the Ninth Circuit may have construed the term "grievance" to include only disputes governed by a negotiated procedure, we must disagree with its interpretation for the reasons already discussed. The language and structure of the statute lead us to a different result. We also disagree with the Ninth Circuit's assumption that the union, as the exclusive bargaining representative of unit employees, has no cognizable interest in being represented when a dispute being pursued under a statutory procedure is the subject of a discussion between an employee and an agency representative. *See* 706 F.2d at 1024–25. The Ninth Circuit suggests that the union's only interest in being present at

a formal discussion of a grievance stems from the fact that it negotiates and plays an institutional role in the collective grievance procedure. *Id.*

We view the interest of unions under the FLMR as potentially far broader. Section 7121 recognizes that employee complaints challenging alleged discrimination or a permanent or temporary removal for allegedly unacceptable performance will often be covered by a collective bargaining agreement as well as by statutory procedures. Double coverage is to be expected: resolution of such episodes can potentially affect all bargaining unit employees in important ways. Decisions about what constitutes an unjust dismissal or an unacceptable basis for preferring or rejecting a single employee spills over to the rights and expectations of all unit employees. Remedies for improper employer conduct, such as reinstatement or retroactive seniority, also may affect other bargaining unit employees, since a benefit or opportunity granted to one employee can mean the loss of the same benefit or opportunity for another employee. The impact of these individual complaints on the bargaining unit will be felt regardless of whether the aggrieved employee opts to pursue a negotiated grievance procedure or an alternative statutory procedure. We are therefore reluctant to follow the Ninth Circuit's suggestion in *IRS, Fresno Service Center* that the union's role in protecting the interest of the bargaining unit is inherently restricted to those situations in which an employee pursues a grievance through a negotiated grievance procedure.

▉ Of course, recognition of a union's interest, as the representative of the bargaining unit, in the alternative statutory procedures guaranteed in § 7121(d) and (e) does not answer the question of the union's statutory role in such procedures. Under the FLMR, the union's institutional role in these statutory grievance procedures is obviously more restricted than its role in a negotiated grievance procedure. The FLMR provides that only the union may

represent an employee in a negotiated grievance procedure if the employee elects not to present the grievance himself; the statute does not similarly restrict an employee's choice of a representative outside the negotiated grievance procedure. *See* 5 U.S.C. § 7114(a)(5). Nonetheless, although the union's institutional role may be restricted, we do not think it necessarily is nonexistent. In the absence of congressional intent to the contrary or any plausible alternative interpretation of the statute by the FLRA, we find that the words of § 7114(a)(2)(A), which provide that an exclusive representative has the right to be present at *any* formal discussion of a grievance between management and a bargaining unit employee, assure the union a role in the alternative procedures so long as the statutory criteria of § 7114(a)(2)(A) are met.[12]

### B. *The Formality of the Discussion*

#### 1. *Lack of Substantial Evidence on the Record*

Because we find that the interview of Lewis concerned a grievance, the only remaining question is the formality of the discussion. In determining whether a discussion should be considered formal, the FLRA examines the totality of facts and circumstances presented. We find that in the present case, the FLRA's reversal of the ALJ's finding that the interview was formal is not supported by substantial evidence on the record and constitutes an unexplained departure from agency precedent.

The FLRA's conclusion that the interview was not formal runs counter to the undisputed evidence. The ALJ found, and the FLRA does not dispute, that the meeting was initiated by management; it was held away from Lewis' normal work area, lasted twenty to thirty minutes, and was marked by the taking of notes by a "high level" management representative. The FLRA concluded that these undisputed indicia of formality were outweighed by the fact that none of the interviewers were in Lewis' chain of supervision.[13] The FLRA also cites as support for its conclusion the lack of a "clear" finding that Lewis' presence was mandatory and the lack of evidence on the record of any advance notice

---

**12.** This case does not require us to decide what the union's rights would be where an employee opts to pursue a grievance outside of the negotiated grievance procedure because the union thinks that prosecution of this specific grievance is not in the interest of the bargaining unit as a whole. In the present case, Murphy requested NTEU to represent him at the MSPB hearing, and NTEU accepted. We do note, however, that in the case of grievances arising out of alleged discrimination on the basis of race, religion, sex or national origin, Congress has explicitly decided that a conflict between the rights of identifiable victims of discrimination and the interests of the bargaining unit must be resolved in favor of the former. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provides that the right of an aggrieved employee to complete relief takes priority over the general interests of the bargaining unit. *See, e.g., Franks v. Bowman Transp. Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (awarding retroactive seniority to individual employee victims of race discrimination). Similarly, a *direct* conflict between the rights of an exclusive representative under § 7114(a)(2)(A) and the *rights* of an employee victim of discrimination should also presumably be resolved in favor of the latter. *Cf. IRS, Fresno Service Center*, 706 F.2d 1019.

**13.** The FLRA actually subdivided this point into three related points. The relevant portion of the FLRA decision states:

The Judge herein found that the interview of Lewis constituted a formal meeting because the meeting was initiated by management, was held in an area apart from the employee's normal work area, and was marked by the taking of notes by "high level" representatives of the Respondent. In disagreeing with the Judge's conclusion that the meeting in question was formal in nature, the Authority notes particularly that the meeting in question was called by staff specialists who did not have any supervisory or managerial responsibility over the employee being interviewed; that the meeting was held in a staff specialist's office and not in the office of anyone in the employee's chain of supervision and no one in that chain attended the meeting; and that there was no clear finding that Lewis' continued presence at the meeting was mandatory. Additionally, the record does not establish that there was any advance notice of the meeting or that any formal agenda was prepared and distributed prior to the interview.

15 F.L.R.A. at 432 (footnote omitted).

of the meeting or any formal agenda distributed in advance of the meeting.

■ Previous FLRA cases have relied on lack of advance notice and distributed agenda as indications that a meeting was spontaneous and therefore unlikely to be "formal." [14] These factors, however, do not always correlate with spontaneity and thus mere absence of notice or an agenda will not necessarily indicate that a meeting is not "formal." In fact, the available evidence in this record indicates the contrary conclusion: that the interview of Lewis was planned in advance. For an attorney and two labor relations specialists to meet at the office of one of the labor relations specialists and in a single day interview *all* of the witnesses to be called at an MSPB hearing surely indicates some advance preparation. *Cf. Office of Program Operations, Field Operations, Social Security Administration*, 9 F.L.R.A. at 50 (refusing to find formal meeting where district manager was at the office on other business and not as a consequence of any advance arrangements). Lack of notice and formal agenda, therefore, offer negligible evidence of informality, since the inference that these factors are sufficient to support, *i.e.*, that the interview *might* have been an impromptu gathering, is directly contradicted by more powerful evidence.

■ The lack of a clear finding that Lewis' continued presence at the interview was mandatory is similarly not controlling as to informality. The evidence concerning what the interviewers told Lewis at the start of the interview is contradictory, and the ALJ never resolved the question of the compulsory nature of the interview. *Cf.* 13 F.L.R.A. 27, 31 n. 1. Where an employee interview is characterized by strong indicators of formality, such as the fact that an employee was summoned to a meeting initiated by three management representatives and held on management's terrain, an asserted lack of clear evidence on a single disputed point such as whether the "continued" presence of the employee was compulsory cannot carry the day for the agency. This is especially true where the FLRA has declined to offer its own assessment of the credibility of the witnesses or to find that Lewis' presence was in fact *not* compulsory.[15]

Finally, the FLRA does not explain why the fact that the interviewers were not in Lewis' direct chain of supervision outweighs the fact that the interviewers were nonetheless management representatives. The focus of prior FLRA decisions has been on whether management representatives attended a discussion. Thus, personnel specialists who addressed employees at an orientation session were considered representatives of the agency and the FLRA found the meeting to be a formal one. *See Department of HEW, Region IV, Atlanta, Ga. and National Treasury Employees Union*, 5 F.L.R.A. 458, 460 (1981). Prior FLRA cases have not required a showing that the agency representatives were within the employee's chain of supervision. *See Internal Revenue Service and National Treasury Employees Union*, 11 F.L.R.A.

---

**14.** *E.g.*, Defense Logistics Agency, Defense Depot Tracy, Tracy, Cal. and Laborers Int'l Union, Local 1276, 14 F.L.R.A. 475, 477 (1984) (looking to "how the meetings were called (*i.e.*, with formal advance written notice or more spontaneously and informally)"); Department of HHS, Social Sec. Admin., Bureau of Field Operations, San Francisco Region and American Fed'n of Gov't Employees, 10 F.L.R.A. 120, 124 (1982) (same); *see also* Office of Program Operations, Field Operations, Social Sec. Admin., San Francisco Region and American Fed'n of Gov't Employees, 9 F.L.R.A. 48, 50 (1982) (refusing to find a formal discussion because meeting was "impromptu" rather than scheduled in advance).

**15.** We find unconvincing the cases cited by the FLRA as support for its transmutation of a "lack of a clear finding" into a positive indication of informality. The prior FLRA cases relying on a lack of evidence have been cases argued on stipulated facts where minimal positive evidence of formality was offered, not cases where such evidence is actually controverted and the FLRA refused to resolve the conflict in testimony. *See, e.g.*, Veterans Admin. Medical & Regional Office Center, Cheyenne, Wyo. and American Fed'n of Gov't Employees, 13 F.L.R.A. 415, 416 (1983); Department of HHS, Social Sec. Admin., Bureau of Field Operations, San Francisco Region and American Fed'n of Gov't Employees, 10 F.L.R.A. 120, 124 (1982).

69, 71 (1983) (finding a formal discussion between employees and members of a task force composed of managerial and supervisory officials where "No task force member interviewed any employee from his own district."), *aff'd mem. sub nom. National Treasury Employees Union v. Federal Labor Relations Authority*, 725 F.2d 126 (D.C.Cir.1984).

■ The Authority considered the totality of facts and circumstances and concluded that the interview of Lewis was not formal in nature. We find this conclusion unsupported by substantial evidence on the record as a whole. Where a discussion to which management summoned an employee is attended by three management representatives, at least one of whom has some responsibilities in the disciplinary process,[16] is held away from the employee's work station in the office of that management representative, lasts for twenty to thirty minutes, and is marked by the taking of notes, the fact that the management representatives are not in an employee's direct chain of supervision does not outweigh or sufficiently negate the other evidence of formality. Therefore, we find the record as a whole does not support the FLRA's conclusion to the contrary.

16. At the hearing before the ALJ, Robert Johnson, the labor relations specialist in whose office the interview was held, testified for the agency that he played a role in the disciplinary process:

> Q. Who supplies the information that goes into the disciplinary record? How does it get into the record?
> A. Well, the supervisors record or document the incident and also the meetings, counseling, with the employees. I review it and, if there is any clarity needed, I would go into it further for matters of clarification.
> Also, the supervisors would discuss the incident with the specialists, and we will advise the supervisor what type of action they should take as a result of the penalty.

J.A. at 43.

17. Section 10(e) provides in pertinent part:

> When a labor organization has been accorded exclusive recognition, ... [t]he labor organization shall be given the opportunity to be represented at formal discussions between management and employees or employee rep-

## 2. Departure From Agency Precedent

The FLRA's conclusion that the Bureau's interview of Lewis was not a formal discussion is also contrary to decisions of the Assistant Secretary for Labor-Management Relations interpreting Section 10(e) of Executive Order 11491, the predecessor to § 7114(a)(2)(A). Section 10(e) of Executive Order 11491 was carried over into § 7114(a)(2)(A) with no significant changes.[17] In *United States Air Force, McClellan Air Force Base, California*, A/SLMR No. 830, 7 A/SLMR 350 (1977), and again in *Internal Revenue Service, South Carolina District*, A/SLMR No. 1172, 8 A/SLMR 1370 (1978), the Assistant Secretary for Labor-Management Relations concluded that an interview by the agency of bargaining unit employees expected to appear as witnesses for a grievant at an arbitration hearing constituted a formal discussion at which the union had a right to be represented under § 10(e). Both decisions turned on a determination that an interview of a witness was a "formal" discussion.[18] The other indicia of formality in these two cases also resembled those of the present case, except that only in the present case did more than one management representative attend the interview.

> resentatives concerning grievances, personnel policies and practices, or other matters affecting general working conditions of employees in the unit.

5 U.S.C. 7114(a)(2)(A) provides:

> (2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—
> (A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment. . . .

18. As explained in Part II.A of our opinion, *supra,* the decision of an employee to pursue a dispute through a negotiated grievance procedure rather than through a statutory procedure does not affect whether a discussion of that dispute concerns a grievance under § 7114(a)(2)(A). We likewise do not think that the choice of procedural route plays any role in determining the *formality* of a discussion under § 7114(a)(2)(A). The FLRA has never advanced such an argument.

In *McClellan,* the attorney representing the agency asked the personnel office to request the employee witnesses to come to his office the next morning. The attorney interviewed the employees at 8 a.m., a few hours before the scheduled arbitration hearing. In *IRS, South Carolina District,* the employee witness was told by his group manager that the attorney representing the agency would like to talk with him; the interview between the employee and the attorney took place later in the month.

■ The decisions of the Assistant Secretary construing § 10(e) were incorporated into the Federal Service Labor-Management Relations Statute by the grandfather provision of § 7135(b). Section 7135(b) of the FLMR provides that

> Policies, regulations, and procedures established under and decisions issued under Executive Order[ ] 11491 ... shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter.

While § 7135(b) does not bar the FLRA from reevaluating the decisions of the Assistant Secretary, § 7135(b) requires the FLRA to treat those decisions as being in full force until it undertakes such a reevaluation. Where, as here, the Congress adopted the provision in the Executive Order in virtually unchanged form and nothing in the legislative history suggests any congressional dissatisfaction with the prior application or interpretation of the provision, we would assume § 7135(b) requires the FLRA to treat the administrative precedent with the same deference as it would treat its own prior FLRA decisions. At a minimum, the FLRA must acknowledge the precedent and provide a reason for departure, just as it must when it reappraises its own precedent. *Cf. Baltimore and Annapolis Railroad Co. v. Washington Metropolitan Area Transit Commission,* 642 F.2d 1365, 1370 (D.C.Cir.1980) (agency must justify a departure from its prior determinations); *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970) ("agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored"), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971).

The reference in the FLRA's decision to *Internal Revenue Service and Brookhaven Service Center and National Treasury Employees Union, Chapter 99 (Brookhaven),* 9 F.L.R.A. 930 (1982), does not constitute the reasoned analysis which the law requires for the FLRA's departure from the policy set forth in the Assistant Secretary's decisions in *McClellan Air Force Base* and *IRS, South Carolina District.* In the first place, *Brookhaven* never discusses *McClellan Air Force Base* or *IRS, South Carolina District* or provides any reason for departing from them. More importantly, however, we do not find *Brookhaven* inconsistent with these two prior cases. In *Brookhaven,* the FLRA found that an agency interview of two bargaining unit employees whom the agency intended to call as its own "major witnesses" in an upcoming arbitration hearing was not a "formal" discussion. The FLRA also determined that the agency's interview of a bargaining unit employee in preparation for an upcoming unfair labor practice proceeding where that employee was not to appear as a witness did not constitute a "formal" discussion. *Brookhaven,* when read in conjunction with *McClellan* and *IRS, South Carolina District,* suggests that a formal discussion is more likely to be found where an agency interviews the witnesses of its opponent than when it interviews its own witnesses or conducts background fact gathering, even if other indicia of formality are similar.

■ When an employer interviews an adverse witness rather than his own or even a neutral witness, common sense suggests that the situation carries a greater potential for intimidation or coercion. In assessing formality under § 7114(a)(2)(A), the FLRA has always considered the potential coerciveness of the encounter. Factors frequently cited by the FLRA as militating

toward a finding of formality, such as mandatory attendance or the number of supervisors present, focus on the confrontational potential of the interview, or at least the perception thereof. *Brookhaven,* along with *McClellan Air Force Base* and *IRS, South Carolina District,* are thus relevant in assessing the coerciveness component of formality. In the present case, the FLRA disregarded its own precedent bearing on the important element of formality supplied by the fact that the Bureau interviewed an adverse witness. Such a departure from precedent, and apparent refusal to consider a relevant factor, requires some word of justification.

### III. CONCLUSION

We conclude that an appeal to the MSPB challenging a dismissal for unacceptable job performance constitutes a grievance as that term is used in the Federal Service Labor-Management Relations Statute. We also find that the FLRA's determination that the interview of Lewis was not formal represents an unexplained departure from administrative precedent and is not supported by substantial evidence on the record as a whole. We therefore reverse the FLRA's decision to dismiss NTEU's unfair labor practice complaint and remand this case to the FLRA so that it may issue an appropriate order directing the Bureau of Government Financial Operations of the Department of Treasury to cease and desist from its unfair labor practice.

*Reversed and Remanded.*