**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, National Treasury Employees Union, Intervenor.**

**No. 85–1478.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1986.

Decided June 17, 1986.

---

William J. Stone, Washington, D.C., with whom Mark D. Roth, Washington, D.C., was on brief, for petitioner.

Jill A. Griffin, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Elaine D. Kaplan, with whom Lois G. Williams, Washington, D.C., was on brief, for intervenor, Nat. Treasury Employees Union.

Before: ROBINSON, Chief Judge, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The American Federation of Government Employees ("AFGE") challenges a decision of the Federal Labor Relations Authority ("FLRA" or "the Authority") dismissing an unfair labor practice charge against the Health Care Financing Administration ("HCFA" or "the Agency"). The Authority rejected AFGE's claim that HCFA had unlawfully assisted the National Treasury Employees' Union ("NTEU"), a rival to AFGE, when it failed to prevent leafletting and solicitation by NTEU in public areas contiguous to the Agency's leased facilities.

It is undisputed that, under the circumstances presented, the Agency could not lawfully permit use of or grant access to the nonpublic areas of its facilities to any union other than AFGE, the exclusive representative of its employees. It is also undisputed that, if HCFA had exclusive control over the so-called public areas in its facilities, the Agency could not lawfully permit a rival union to enter onto the premises for purposes of leafletting or solicitation. AFGE contends that, although the General Services Administration ("GSA") has "ultimate control" of the public areas at issue, HCFA possesses sufficient authority under the relevant GSA regulations to prohibit NTEU from utilizing the areas to engage in the activities in question. Thus, AFGE maintains, the Agency's failure to exercise its control over use of these areas constitutes unlawful assistance to a rival labor organization.

We can find no indication in the opinion of the Authority that it considered either the meaning of the GSA regulations or any relevant past practice in its decision in the instant case. A reasoned interpretation of

these regulations is essential to an understanding of HCFA's actual control over the use of the public areas which, in turn, determines the extent of its obligation to seek to exclude NTEU. If HCFA has some real measure of control over access to the public areas, its failure to bar or to seek exclusion of NTEU may have been unlawful assistance. We therefore remand this matter to FLRA for a determination of the scope of HCFA's control of these areas under the GSA regulations. In so doing, we intimate no view as to the parameters of the Agency's responsibility to take further action in the event that FLRA determines that NTEU's activities in the public areas violate the GSA regulations, and GSA ignores or refuses a proper request for the exclusion of the rival union. That question, too, we remand for the Authority's consideration in light of its interpretation of the GSA rules.

## I. BACKGROUND

### A. *Factual Setting*[1]

AFGE has been the exclusive bargaining representative of a unit of employees at HCFA's Baltimore, Maryland location since 1980. In 1981, NTEU indicated its interest in representing that same group of employees, setting in motion the chain of events leading to the instant lawsuit.

HCFA's Baltimore offices are in a multi-building complex; the Agency occupies several buildings, including the majority of space in two connected buildings—the East High Rise and East Low Rise (the Social Security Administration occupies some space on the ground and first floors of the latter). Both structures are rectangular with entranceways and lobby areas on three sides; between the buildings is a cafeteria with its entrances off the ground floor hallways of the East High Rise.

The buildings are owned by GSA; HCFA leases space and pays a standard level users' charge ("SLUC") for its use. No SLUC is paid for the cafeteria, lobby areas or hallways. The general public may freely enter these areas, and the agency may obtain their use by memo or telephone call requesting GSA's permission.

In November 1981, an NTEU representative met with HCFA's Director of Labor Relations, Mr. Holman, and informed him that NTEU intended to enter the HCFA premises to distribute literature and solicit signatures. At that time, Mr. Holman indicated that HCFA could provide no facilities or assistance to NTEU. The NTEU representative asked, and was told, which areas of the HCFA buildings were considered public.

In December 1981, nonemployee representatives of NTEU solicited signatures for a petition to support an election between AFGE and NTEU and distributed leaflets in the public areas. AFGE representatives complained to Mr. Holman that NTEU should be denied access to the premises. He responded that NTEU was on GSA property and therefore beyond HCFA's control.

In early 1982, Mr. Holman performed a further investigation of whether NTEU could be barred from the public areas by HCFA. The GSA employee in charge of administering the two buildings "waivered [sic] a little bit" on the question; in fact, at one point, he told an AFGE representative "that HCFA controlled the areas of the East Low Rise in which NTEU was soliciting."[2] Ultimately, however, the GSA employee's superior informed Mr. Holman that NTEU's activities would not be prohibited.

In January 1982, NTEU notified HCFA of its intention to reenter the premises. HCFA requested a postponement of reentry, conducted a further investigation and, apparently, made a tentative decision to forbid the NTEU activity. NTEU contend-

---

**1.** The facts recited hereinafter are the findings made by the Administrative Law Judge ("ALJ") and adopted in full by FLRA. *See Department of Health and Human Services, Health Care Financing Administration,* 18 F.L.R.A. 429 (1985), *reprinted in* Joint Appendix ("J.A.") 174–81 [hereinafter "Decision of the ALJ"].

**2.** *Id.* at 4, *reprinted in* J.A. 177.

ed that HCFA had no authority to grant or deny access and that GSA regulations provided procedures permitting their activities, but agreed to postpone action for two weeks to permit HCFA to reconsider.

Two weeks later NTEU called to announce its reentry the next day; Mr. Holman stated that he lacked authority to prevent its actions. Subsequently, NTEU solicited signatures among HCFA employees at the Baltimore facilities on four separate occasions.

## B. Administrative Proceedings

AFGE filed an unfair labor practice charge, and the General Counsel of FLRA issued a complaint alleging that HCFA had violated section 7116(a)(3) of the Federal Services Labor-Management Relations Statute[3] ("the Statute") by permitting or failing to take action to prevent the solicitation of signatures by nonemployee representatives of NTEU at HCFA's Baltimore buildings.

Following a hearing, the ALJ recommended dismissal of the complaint. He first observed that, under the circumstances, it would have been unlawful for HCFA to grant NTEU access to Agency premises. However, he concluded that HCFA

did not give any unlawful assistance to NTEU. Respondent did not permit or authorize NTEU to utilize any of Respondent's facilities. Those facilities that NTEU used were controlled by GSA.[4]

Moreover, the ALJ determined that under the statute, HCFA had no "affirmative obligation to go to another, totally separate, Federal Agency, GSA, and, to some degree, urge or insist that GSA forbid NTEU from utilizing GSA controlled space...."[5]

The ALJ found irrelevant AFGE's claim that the GSA regulations themselves prohibited NTEU's activities and, in fact, gave HCFA the authority to prevent them from taking place. He stated:

General Counsel of the FLRA also contends that NTEU's use of GSA space violated GSA's own rules and regulations. Somehow this was alleged to be a violation of law by Respondent. On the contrary, while that was a matter among GSA, NTEU and AFGE, it did not constitute a violation of the Statute by Respondent.[6]

As a result, the ALJ did not discuss or interpret the regulations governing public areas in GSA buildings; in particular, he did not indicate the level of control they give the occupant agency—here HCFA—over their utilization.

The Authority issued a conclusory order, affirming the ALJ's ruling and adopting his findings and conclusions. This appeal followed.

## II. ANALYSIS

Section 7116(a)(3) of the Statute provides:

[I]t shall be an unfair labor practice for an agency—

. . . .

(3) to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status.[7]

 Under this section and relevant caselaw, it is unlawful for an agency whose employees have selected an exclusive representative to provide a union that does not possess "equivalent status"[8] access to its

---

**3.** 5 U.S.C. § 7101 et seq. (1982).

**4.** Decision of the ALJ at 7, supra note 1, reprinted in J.A. 180.

**5.** Id. at 8, reprinted in J.A. 181.

**6.** Id.

**7.** 5 U.S.C. § 7116(a)(3) (1982).

**8.** A rival to a union acting as exclusive representative attains "equivalent status" by filing a petition raising a question concerning representation or by timely intervention in proceedings related to such a petition. See United States Department of the Interior, Pacific Coast Region, Geological Survey Center, Menlo Park, 2 A/SLMR 160 (1972).

premises in order to conduct organizational or solicitation campaigns.[9] The theoretical underpinning of these decisions was set forth in *Department of the Army, United States Army Natick Laboratories:*

> To hold otherwise could ... grant to an agency ... the power to pick or choose the particular rival labor organization it desires to unseat an incumbent, rather than leaving such a choice where it properly belongs—in the hands of the unit employees. Moreover, the labor-management stability sought to be achieved through a meaningful bargaining relationship constantly could be placed in jeopardy by an agency ... using as leverage in the bargaining relationship the power to permit representatives of a rival organization on its premises at any time for campaigning purposes.[10]

Neither FLRA nor NTEU contend that the latter has obtained a status equivalent to that of AFGE, which acts as the exclusive bargaining representative for the HCFA unit. Under these circumstances, counsel for FLRA properly conceded at oral argument that, but for the question of GSA involvement, there would be no doubt

that permitting NTEU into the buildings in question (whether or not into actual work areas) would constitute unlawful assistance. Thus, the only relevant question is whether GSA's role as lessor of the buildings alters this outcome.

■ AFGE contends that HCFA could and should require GSA to forbid NTEU's activities on the premises. FLRA responds that the Agency has not engaged in unlawful assistance because it does not control the public areas in question. Thus, on review, this court must decide whether and to what extent HCFA controls access to the public areas. Unfortunately, the record is almost completely devoid of the factual material and reasoning essential to such a determination.

The scope of the GSA rules and regulations governing the use of public buildings is vital to this lawsuit. These regulations determine whether HCFA may be deemed to control the use of the public areas. If HCFA does exercise control over access for the purpose of engaging in the activities in question, then it would be reasonable to require HCFA to exert some authority to deny entry to NTEU.[11]

---

**9.** It is settled caselaw under section 19(a)(3) of Exec. Order No. 11,491, 3 C.F.R. 861 (1966–1970 Comp.), *reprinted in* 5 U.S.C. § 7101 at 258 (Supp. III 1979), that an agency generally may not provide access to or use of its facilities to any labor organization without "equivalent status." FLRA and its predecessor, the Assistant Secretary of Labor for Labor-Management Relations, have held that an agency provides unlawful assistance when it permits a union without "equivalent status" to distribute materials through the agency's internal mail system, *United States Department of the Interior, Pacific Coast Region, Geological Survey Center, Menlo Park,* 2 A/SLMR 160 (1972), or to use management's half of a locked bulletin board, *United States Department of Justice, United States Immigration & Naturalization Service,* 9 F.L.R.A. 253 (1982), *rev'd on other grounds sub nom. United States Department of Justice v. FLRA,* 727 F.2d 481 (5th Cir.1984). In addition, agencies have not been permitted to provide space on their premises for organizational campaigns, *Department of the Army, United States Army Natick Laboratories, Natick,* 3 A/SLMR 193 (1973), or to arrange display tables for solicitation purposes at the agency facility, *Defense Supply Agency, Defense Contract Admin. Services Region, SF, Burlingame,* 2 A/SLMR 106

(1973). Although the Executive Order is no longer in force, all parties agree that precedent developed thereunder is compelling authority for the interpretation of section 7116(a)(3) of the Statute. *See NTEU v. FLRA,* 774 F.2d 1181, 1192 (D.C.Cir.1985).

The sole exception to this general prohibition is that a union without "equivalent status" may obtain access to an agency's facilities if it demonstrates to the agency that, after diligent effort, it has been unable to reach the agency's employees through reasonable, alternative means of communication. NTEU and FLRA do not maintain that this exception applies, but rather contend that the rival union has not received access to agency facilities.

**10.** 3 A/SLMR at 196 (footnote omitted).

**11.** In his opinion, the ALJ stated that any infringement of the GSA regulations was a matter of private concern among HCFA, GSA and AFGE, but would not itself constitute a violation of the Statute. This analysis misconceives the true import of AFGE's argument, which is that the regulations *govern* HCFA's and GSA's respective control of the public areas and that, in fact, HCFA has sufficient control to prevent or permit the NTEU activities.

A "public area" is defined by the GSA regulations as "any area of a public building or its grounds ordinarily open to members of the public, such as lobbies, courtyards, auditoriums, meeting rooms, and any other area not specifically leased by any lessee of the public building." [12] The areas at issue here—hallways, entries to elevators, cafeteria entrances, etc.—plainly fall within this definition.

The regulations impose a broad prohibition on "soliciting ... of all kinds ... on GSA-controlled property" with certain narrow exceptions, among them "solicitation of labor organization membership or dues *authorized by occupant agencies....*" [13] This section strongly suggests that solicitation by labor organizations is impermissible, with a narrow exception for solicitation of membership and dues if *"authorized"* by the lessee agency.[14] Under this reading of the regulation, HCFA would possess authority to permit (and therefore to prohibit) the NTEU solicitation in the public areas. A finding that HCFA has such authority would have clear implications for the Agency's obligations with respect to AFGE, the exclusive bargaining agent of its employees—implications the Authority was unable to consider because it failed to construe the GSA regulations governing the public areas. Nor does the record reveal the extent to which, under past practice, the occupant agency has actively participated in decisions pertaining to use of the so-called public areas. We remand for a consideration of these matters and a determination as to their effect on the question of GSA's control of and responsibility for use of the public areas.

If the Authority decides that the GSA regulations confer upon HCFA the authority to prevent the use of the public areas for the activities in question, then a second question arises. FLRA must determine the nature of the Agency's responsibility in the event that GSA officials improperly permit a rival union to utilize the public areas. We emphasize that we express no view on the dimensions of the Agency's obligation under those circumstances. For example, we do not decide what the Agency must do should GSA ignore or refuse its proper request for exclusion of a rival union. That question, too, we remand for FLRA's consideration. It is clear, however, that interpretation of the GSA regulations by FLRA is a necessary prerequisite to any determination of the extent of HCFA's responsibility to exclude NTEU from the public areas of its premises.

### III. Conclusion

We remand this case for further treatment by the Authority because the record and the explanation presented are insufficient to support judicial review.

*So ordered.*

---

**12.** 41 C.F.R. 101–20.701(b) (1985).

**13.** *Id.* 101–20.308 (emphasis supplied).

**14.** Counsel for NTEU speculated at oral argument that the ban on union solicitation applied only to solicitation of membership and dues— activities not engaged in by NTEU in the instant case. First, we note that this reading strains the language of the regulation, which apparently bans all solicitation with the *exception* of that of membership or dues when authorized. Second, and most significantly, one can *only* speculate as to the meaning of this regulation as FLRA did not consider its meaning or address its impact on the extent of HCFA control.