**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Social Security Administration, American Federation of Government Employees, Intervenors.**

No. 92–1383.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1992.

Decided Feb. 26, 1993.

538

Elaine D. Kaplan, Deputy Director of Litigation, Nat. Treasury Employees Union, with whom Gregory O'Duden, Director of Litigation, and Clinton D. Wolcott, Asst. Counsel, National Treasury Employees Union, were on the brief, for petitioner.

James F. Blandford, Atty., Federal Labor Relations Authority, with whom William E. Persina, Sol., and William R. Tobey, Deputy Sol., Federal Labor Relations Authority, were on the brief, for respondent.

Alexia F. McCaskill, Staff Counsel, American Federation of Government Employees, with whom Charles A. Hobbie, Deputy General Counsel, and Mark D. Roth, General Counsel, were on the brief, for intervenor American Federation of Government Employees.

Daniel J. Standish, John D. Bates, Jay B. Stephens, U.S. Atty., and R. Craig Lawrence, Asst. U.S. Atty., entered appearances for intervenor Social Security Admin.

Before WALD, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The Social Security Administration refused to give the National Treasury Employees Union a permit to distribute literature in the outdoor areas—such as sidewalks—at Woodlawn, a campus-like complex of federal government office buildings near Baltimore. The Union filed a complaint with the Federal Labor Relations Authority alleging that the SSA's refusal to grant it a permit was an unfair labor practice under the Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7116(a)(1) and (a)(3). The FLRA held—expressly without regard to the constitutional implications of its decision—that there was no unfair labor practice, and indeed that § 7116(a)(3) of the Statute prohibits the SSA, as employer, from giving the NTEU access equal to that of the union that represents its employees. The NTEU now petitions this court for review of the FLRA decision. We remand the matter to the Authority to reconsider its decision in light of the serious first amendment question that would be raised if the Statute must be interpreted as the Authority has done.

## I. Background

The Woodlawn facility is owned by the General Services Administration. The SSA is not the sole tenant of the facility, however; other federal agencies, such as the Health Care Financing Administration, also lease space there. *AFGE v. FLRA,* 793 F.2d 333 (D.C.Cir.1986). The outside areas at Woodlawn are not leased to the SSA or to any other tenant; the SSA merely administers those areas pursuant to a delegation agreement it entered into with the GSA in 1986.

Prior to the delegation agreement, the GSA had permitted the NTEU to collect signatures in the outside areas at Woodlawn. When the SSA took over administration of the facility, it refused the NTEU access in the belief that for it (as opposed to the GSA) to grant such access would be an unfair labor practice. *See AFGE v. FLRA,* 793 F.2d at 336–337 (employer required to treat non-incumbent union less favorably than incumbent union).

The NTEU charged the SSA with committing an unfair labor practice in violation of § 7116(a)(1) of the Statute, which provides that an agency not "interfere with, restrain or coerce any employee in the ex-

ercise by the employee of any [protected] right." Before the Authority had ruled, the NTEU brought a second action, this time in the district court, claiming that the SSA's refusal to give it a permit violated the Union's rights under the first amendment. The district court dismissed the suit because the NTEU had not first exhausted its administrative remedies.

On appeal, this court agreed that exhaustion was required. We held, however, that because the NTEU's constitutional claim was urgent but could not be adjudicated fully in an administrative proceeding, the case should remain on the district court's docket for three months. *NTEU v. King*, 961 F.2d 240 (D.C.Cir.1992) (*King I*). If by the end of that time the Authority had not decided the statutory issue before it, or had ruled against the NTEU, then the district court could properly rule upon the merits of the Union's constitutional claim.

Just short of three months later the Authority issued its decision, holding that the SSA's refusal to grant the NTEU access to the outdoor areas at Woodlawn was not an unfair labor practice under § 7116(a)(1). Further, the FLRA opined that the SSA would have committed an unfair labor practice under § 7116(a)(3) had it issued the permit. That section provides that an agency may not "sponsor, control or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status." In reaching these conclusions, the Authority expressly declined to consider either the NTEU's contention that the first amendment should guide the Authority's construction of § 7116(a)(3) or its claim that its first amendment rights were abridged by the SSA's refusal to grant it a permit. *SSA & NTEU & AFGE*, No. 3–CA–10859 (June 22, 1992).

The district court then reopened the case before it, found that the outdoor areas at Woodlawn are a "public forum," and held that by denying the NTEU a permit the SSA had abridged the Union's first amend-

ment rights. *NTEU v. King*, 798 F.Supp. 780 (D.D.C. July 24, 1992) (*King II*) (appeal pending). Meanwhile, the NTEU petitioned for review of the FLRA decision. It is that petition that we decide today.

## II. Analysis

■ The NTEU urged the Authority, and the Authority refused, to consider the first amendment implications should it interpret § 7116(a)(3) to bar the SSA from issuing the Union a permit to distribute literature on the sidewalks of a campus-like federal facility. The constitutionality of the Statute, so interpreted, would be drawn seriously into question, and we would have to decide whether the sidewalks at Woodlawn are a public forum. *See Community for Creative Non–Violence v. Turner*, 893 F.2d 1387 (D.C.Cir.1990) (invalidating permit requirement to speak in areas of subway stations deemed public fora under the first amendment).

■ The FLRA may have believed itself constrained to ignore the constitutional question because this court had noted in *King I* that the "NTEU's claim involves constitutional rights not adjudicable in the administrative hearing...." 961 F.2d at 243 (citing *Steadman v. Governor, U.S. Soldiers' & Airmens' Home*, 918 F.2d 963 (D.C.Cir.1990) (holding that "when a remedy is available under the statutory scheme as well as under the Constitution ... [plaintiff] must first seek relief from the FLRA"); and *Wallace v. Lynn*, 507 F.2d 1186 (D.C.Cir.1974) (plaintiff must exhaust administrative remedies before seeking relief in district court on constitutional ground)). We did not suggest in *King I*, however, nor do the cited cases, that the Authority may not consider the constitutional implications of its choice between permissible interpretations of the Statute. It is a commonplace, of course, that "constitutional policy can provide a valuable aid in determining the legitimate boundaries of statutory meaning," *Singer*, 2A *Sutherland Statutory Construction* § 56.02 (4th ed. 1984)—and no less so, we suppose, when an agency rather than a court is reading the statute.

The Authority is prohibited only from disposing of a case upon constitutional rather than statutory grounds, not from taking into account the uncertain constitutionality of the Statute as interpreted one way but not another. *See Meredith v. FCC*, 809 F.2d 863, 872–73 (D.C.Cir.1987). The consequences could be most untoward if the Authority were at large to select one of two or more reasonable interpretations of the Statute without regard to the constitutional question it would present. This court would then presumably be obligated to defer to the Authority's reasonable interpretation of the Statute, *see Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and thus perhaps to resolve a constitutional issue that would not arise under the other reasonable reading of the law. The norm of constitutional avoidance counsels against this result. *See DeBartolo Corp. v. Fla. Gulf Coast Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988); *Meredith*, 809 F.2d at 872 ("By holding ... that the Commission was required in an enforcement proceeding to respond to [the charged party's] constitutional challenge, we guard against premature or unnecessary constitutional adjudication"). That is not to say that the agency is obliged to adopt the reading that avoids the constitutional issue, but only that it is obliged to consider the possible invalidity of the Statute in selecting between reasonable readings.

Had the FLRA been receptive to the constitutional implications of its the statutory analysis, it would still have had to reject the NTEU's claim that, in light of the first amendment concerns, the anti-favoritism norm (*i.e.* do not treat unlikes alike) of § 7116(a)(3) should not be applied to non-work areas. That interpretation of the Statute was effectively foreclosed by our decision in *AFGE v. FLRA*, 793 F.2d at 337 (noting that "counsel for FLRA properly conceded at oral argument that, but for the question of GSA involvement, there would be no doubt that permitting NTEU into the building in question (whether or not into the actual work areas) would constitute unlawful assistance").

The Authority might well, have noticed another argument, however, although the Union did not present it as clearly as it might have done. This court has interpreted § 7116(a)(3) as requiring an agency to exclude a union without status equivalent to that of the incumbent union—*i.e.*, a union that had not submitted to the FLRA enough signatures to force an election—from "its premises" or "its facilities." *AFGE v. FLRA*, 793 F.2d at 337 n. 9. In this case it is by no means clear, however, and the Authority did not determine, whether the outside areas of Woodlawn, which the SSA administers pursuant to the delegation from the GSA but which are not leased to the SSA, constitute "its premises" or "its facilities" for the purposes of § 7116(a)(3). If they do not, then in granting a permit for access thereto the agency would presumably be acting in its capacity as the GSA's building manager and not in its capacity as an employer. Before we are asked to resolve the first amendment issue precipitated by the Authority's interpretation of the Statute, the Authority ought to consider this statutory question, mindful of the first amendment implications of its determination.

## III. Conclusion

In order to avoid the possibly unnecessary resolution of the petitioner's first amendment challenge to § 7116(a)(3) as interpreted by the FLRA, we remand this matter for the Authority first to determine whether the outside areas of the Woodlawn complex are the SSA's premises or facilities for the purpose of that section of the Statute.

*So ordered.*