**Edward R. VINIERATOS,
Plaintiff–Appellant,**

v.

**UNITED STATES of America, DEPARTMENT OF the AIR FORCE, Through Edward C. ALDRIDGE, Jr., Secretary of the Air Force, Defendant–Appellee.**

Nos. 89–55718, 89–55719.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1990.

Decided July 23, 1991.

S. Timothy Buynak, Jr., Hatch & Parent, Santa Barbara, Cal., for plaintiff-appellant.

Jan L. Luymes, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before WALLACE, Chief Judge, and O'SCANNLAIN and RYMER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Edward Vinieratos charges the United States Air Force with employment discrimination and wrongful removal from his civilian job. More specifically, he challenges two Air Force decisions: the decision to discontinue providing certain "accommodations" for his alleged mental handicap and the subsequent decision to terminate his employment as an engineer. After filing a multitude of formal and informal complaints under three separate administrative systems, he filed two virtually identical complaints in the district court. The court consolidated and dismissed both actions on jurisdictional grounds, and Vinieratos now appeals.

## I

In essence, we are asked to sort out the interplay between the administrative systems under (a) the Equal Employment Opportunity Commission ("EEOC"), (b) the Merit Systems Protection Board ("MSPB"), and (c) the internal grievance system of the Air Force itself; their degree of overlap and exclusivity; and the role of exhaustion of administrative remedies as a prerequisite for judicial review.

Appellant Vinieratos was employed as a Program Planning Engineer at the Vandenberg Air Force Base. At least as early as 1984, he began to experience persistent headaches and insomnia, which his doctor, Miriam Yost, diagnosed as symptomatic of a "stress-related condition." Pursuant to her diagnosis, Dr. Yost recommended that appellant "be allowed to work [a] Flex[ible] Work Sched[ule] in attempts to decrease his stress level [and] maximize [his] exercise time." In fact, during the course of 1984, Dr. Yost gave appellant numerous prescription slips in which she urged that he be given flexible hours, a "[n]on-smoking environment," and "civil treatment with [an] optimal degree of autonomy." In one such prescription, Dr. Yost explained:

In my opinion, it is advisable to state explicitly the following stress reduction procedures to obtain optimal work performance from Mr. Vinieratos:

1. He works best autonomously[.]

2. [He works best] when treated politely[.]

3. [He works best] in a smoke-free environment.

Despite the vagueness and breadth of these prescriptions, the Air Force apparently was able to satisfy appellant's medical needs by providing special "accommodations" for approximately two years after 1984. As appellant describes them, these accommodations included a variable and flexible work schedule, a measure of personal "autonomy," and some degree of managerial authority. For a while at least, appellant appeared satisfied with the Air Force's efforts to accommodate him.

In January 1987, however, the Air Force assigned a new officer, Major James S. Johnson, to supervise appellant's work, and Johnson immediately denied appellant any special treatment. On February 6, 1987, Johnson committed the first of the Air Force's allegedly illegal acts: he discontinued appellant's accommodations. In response, appellant retained his current attorney, and on February 27, appellant filed an informal equal employment opportunity ("EEO") complaint with Vandenberg's Chief EEO Counselor, Sylvester Cole. In a letter accompanying his complaint, appellant purported to give Cole "unlimited permission to represent [sic] the resolution of my complaint until [its] satisfactory completion." Although appellant expressly contemplated "the need to file temporizing [sic] ... grievances" under the union-assisted negotiated grievance procedure, a wholly separate administrative system, he stated an unequivocal preference to have his dispute handled through the EEO process:

if the said [union-assisted] grievances are made mention of by base authorities so as to thwart the expediency of the processing of said EEO Complaints[,] I hereby give you discretionary permission to render you[r] efforts superior and to subordinate said blockages you might encounter. Please try to contact me or the union representative in the event of said problems. However, I vest in you the discretionary power, as stated.

Letter from Edward Vinieratos to Sylvester Cole (Feb. 27, 1987).

On March 13, 1987, appellant sent Chief Counselor Cole six pages of "supplemental data" in which he detailed "additional offenses" alleged to have been committed by the Air Force in the two-week period since his initial filing. A week later, on March 20, he again supplemented his EEO complaint and simultaneously began to pursue a different remedy. With the assistance of a union representative, appellant filed an informal grievance pursuant to the Air Force's negotiated grievance procedure.

Appellant now had actions proceeding in two separate administrative fora, and it was not long before he experienced an apparent change of heart about which process was preferable. On June 11, 1987, he delivered a handwritten note to Chief Counselor Cole in which he apparently attempted to countermand his February 27 letter: "Before [I file] a formal EEO complaint, I'd like to give [the] IG a chance. OK?" Note from Edward Vinieratos to Sylvester Cole (June 11, 1987). On June 22, however, appellant supplemented his informal EEO complaint for the third time.

In the midst of this procedural confusion, the Air Force agreed to meet with appellant informally to try to resolve the parties' differences. Accordingly, on June 30, 1987, appellant, Chief Counselor Cole, Air Force officials, and various attorneys met and agreed to a temporary arrangement by which the Air Force promised to continue to provide accommodations for appellant pending a second meeting scheduled for August 12, 1987.

The parties' accounts of what transpired in the days immediately following the June 30 meeting are not consistent. Appellant claims that on the following day, July 1, he left instructions with Chief Counselor Cole by which he purported to file a formal EEO complaint. The Air Force, on the other hand, maintains that appellant still wished to stall the EEO proceedings in order to pursue alternative avenues of relief and

that he never actually filed his complaint. Chief Counselor Cole's records indicate that appellant and his representative informed Cole on June 30 that they were "not completely satisfied with the outcome of th[e] meeting" and that "*in all probability* they would be filing a formal [EEO] complaint." (Emphasis added). Cole's records also indicate that on July 2, appellant told Cole that "what he would really like to do is *wait and see* how this temporary agreement worked out, [and] *then* he would file his formal complaint." (Emphasis added). In any event, the complaint was never processed, and the document itself, which appears in the administrative record, is undated.

When the parties' temporary agreement expired on August 12, the Air Force offered to continue the arrangement adopted on June 30, but it declined to meet with appellant who, having not been satisfied with the accommodations, rejected the offer. Several weeks passed, and the parties' relationship steadily deteriorated. After an annual review in mid-September, the Air Force rated appellant's job performance "unacceptable," and on October 2, appellant filed another union-assisted informal grievance to challenge that rating and the Air Force's continued refusal to accommodate his alleged handicap. Appellant filed yet another informal grievance on October 8, and on October 23, he quit his job altogether "to maintain his sanity." Three days later, he filed two more grievances under the union-assisted procedure—one of which he designated as a formal grievance.

After responding to these various grievances, the Air Force issued appellant a notice of proposed removal on November 13, 1987. The eight-page notice detailed a long history of alleged misconduct and unexcused absences from work. The notice also claimed that appellant had failed to produce adequate documentation for his alleged mental handicap and that his demands for accommodation had been unreasonable. Finally, the notice advised appellant of his right to respond to these allegations.[1]

---

1. On December 10, 1987, the Air Force issued a three-page amendment to its notice in which it

alleged further instances of misconduct.

On January 8, 1988, appellant replied in writing, and on January 21, he reverted to the EEO process and filed two formal complaints. The first, dated July 1, 1987, was an apparent attempt to revive the complaint that appellant claims he originally filed on that date. The second, dated January 19, 1988, was filed in "response" to Chief Counselor Cole's Final Interview Report, which Cole actually issued two days later. Although it dismissed the first complaint as untimely, the Air Force accepted and proceeded to process the second.

Meanwhile, on February 24, 1988, the Air Force formally removed appellant from his position, thereby committing the second of its allegedly illegal acts. The removal notice advised appellant that he could appeal *either* to the Merit Systems Protection Board ("MSPB") *or* through the negotiated grievance procedure, but that he could not do both. On March 10, appellant elected the former option and filed an MSPB appeal. He now had actions pending in three administrative fora, and once again he undertook to explain which of the three he preferred.

On April 13, 1988, appellant's attorney wrote to Chief Counselor Cole's successor, Richard Kapinos, to convey appellant's desire that the EEO proceedings "defer to the MSPB proceedings." Letter from S. Timothy Buynak to Richard Kapinos at 2 (Apr. 13, 1988). On April 25, appellant's attorney wrote to Kapinos a second time to explain that "the proceeding before the MSPB can be deemed to encompass the entire course of [the allegedly discriminatory] conduct [at] the Vandenberg Air Force Base, and not simply the removal action." Letter from S. Timothy Buynak to Richard Kapinos at 6 (Apr. 25, 1988).

Nonetheless, on May 5, appellant's counsel filed yet another formal EEO complaint, and on the following day, he filed a motion before the MSPB in which he requested that "the Merit Systems Protection Board defer the processing of Appellant's Appeal so that the removal c[ould] be reviewed through the EEO complaint process." Motion for Deferral of Jurisdiction for Processing Under Agency EEO Regulations at 6–7, *Vinieratos v. Department of the Air Force*, No. SF07528810384 (MSPB May 6, 1988). On June 17, an administrative law judge summarily dismissed the MSPB action without prejudice to allow appellant to pursue a remedy under the EEO system.

Almost simultaneously, however, on June 27, 1988, the Air Force's Director of Civilian Personnel dismissed appellant's two outstanding EEO complaints. Citing applicable federal regulations and acting on the advice of both Kapinos and Vandenberg's commanding officer, the Director held that appellant's MSPB filing had constituted a new, irrevocable election to pursue relief through that body.[2] The Di-

---

**2.** The Director cited and relied upon two regulations. The first provides:

> An aggrieved person may *initially* file a mixed case complaint with an agency [under the EEO mechanism], or (s)he may file a mixed case appeal directly with the MSPB ..., but not both.... The person shall be advised that (s)he may not *initially* file both and that whichever is filed first (the mixed case complaint or the appeal) shall be considered an election to proceed in that forum.

29 C.F.R. § 1613.403 (1989) (emphasis added). A "mixed case" is one for which both the EEO and the MSPB could conceivably have administrative jurisdiction. It is a case that involves a challenge to a managerial decision that is appealable to the MSPB as well as a claim of employment discrimination. *See id.* § 1613.402(a) (defining "mixed case complaint"). Appellant expressly alleged that his case was "a mixed case" when he filed his two formal EEO complaints on January 21, 1988. *Initially*, therefore, appellant made a knowing election to proceed with a mixed case complaint under the EEO system.

The second regulation upon which the Director relied states:

> If, following a complaint on a proposal [by an agency to take an action that is appealable to the MSPB], the complainant *subsequently* files an appeal with the MSPB on the *subsequent* agency decision resulting from that proposal, the agency shall cancel the complaint on the proposal. The complainant shall be advised by the agency that any allegations of discrimination contained in that complaint should be raised with the *MSPB*, in connection with the pending appeal.

*Id.* § 1613.406(a)(2) (emphasis added). Appellant had indeed challenged the proposal to remove him before challenging the actual removal decision. Thus, when he filed his MSPB appeal, the Air Force reasoned, he thereby cancelled his initial EEO election and any ongoing EEO proceedings.

rector then advised appellant that he could challenge the dismissal orders either by appealing directly to the Equal Employment Opportunity Commission ("EEOC") or by filing suit in federal court.

On June 30, 1988, appellant chose the latter option and filed the first of his two complaints in federal district court. Nearly a month later, on July 27, he filed another and nearly identical complaint. After consolidating the actions, the district court dismissed both on April 20, 1989. The court held that it lacked proper subject-matter jurisdiction for several reasons. *See Vinieratos v. United States Air Force*, Nos. 88–4015, 88–4550 (C.D.Cal. Apr. 20, 1989). First, it held that appellant had made an irrevocable election to proceed through the negotiated grievance procedure when he originally filed his first union-assisted grievance. Second, as an alternative ground, the court held that appellant's EEO claims were not timely filed and that in any event, they were properly cancelled upon the filing of the MSPB action. Third, the court found that appellant had failed to exhaust his administrative remedies. Finally, the court held that appellant had improperly named the Air Force as defendant when only the Secretary could be a proper party.

On June 15, 1989, appellant bestowed his cumbersome administrative history upon this court by filing these timely appeals.

## II

A district court's dismissal for lack of jurisdiction is reviewable by this court under 28 U.S.C. § 1291. Appellant alleges that the district court had proper jurisdiction under four separate statutes: (1) Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (42 U.S.C. § 2000e–16(c)); [3] (2) the Rehabilitation Act of 1973 (29 U.S.C. § 794a); (3) the Civil Service Reform Act of 1978 (5 U.S.C.

§§ 7702–03); and (4) the general federal question statute (28 U.S.C. § 1331).

The Air Force proposes a four-step analysis to support dismissal for lack of jurisdiction. It maintains (1) that appellant originally elected to pursue his claim through the negotiated grievance procedure; (2) that such an election is legally irrevocable; (3) that appellant effectively abandoned the negotiated grievance procedure when he filed his EEO and MSPB complaints; and (4) that abandonment constitutes a failure to exhaust administrative remedies and hence, deprives the federal courts of jurisdiction.

In response, appellant insists that he originally elected the EEO procedure and that all his other filings must be deemed subordinate to that initial filing. He then argues that the failure of the EEO counselor to act upon his complaint—rather than his own abandonment of that complaint—is what ultimately derailed the administrative process. Under such circumstances, appellant argues, judicial review is both appropriate and necessary. When the administrative process breaks down so that the ordinary exhaustion of a claim is not possible, the law will confer jurisdiction on the courts as a matter of administrative default after the passage of a specified period of time. *See* 42 U.S.C. § 2000e–16(c) (1988); 29 C.F.R. § 1613.281 (1989).[4]

There are elements of truth in both parties' views. We address each of the four statutory bases of alleged jurisdiction in turn below.

## III

### A

The existence of proper subject-matter jurisdiction under Title VII is a question of law reviewable de novo. *See Mahoney v. United States Postal Serv.*, 884 F.2d 1194, 1196 (9th Cir.1989). Title

---

3. "Until it was amended in 1972 by the Equal Employment Opportunity Act, ... Title VII did not protect federal employees." *Brown v. General Servs. Admin.*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976).

4. We cite throughout to the 1989 edition of the Code of Federal Regulations. The relevant provisions have not changed in any material respects since appellant initiated this action in 1987.

VII specifically requires a federal employee to exhaust his administrative remedies as a precondition to filing suit. *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. at 1961, 1965, 48 L.Ed.2d 402 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him."); *see also Cooper v. Bell*, 628 F.2d 1208, 1211 (9th Cir.1980) (Title VII "contemplates the invocation of administrative remedies as a condition precedent to litigation" by a federal employee) (citing *Brown* ). Whether a claimant has satisfied that precondition is itself a question of law reviewable de novo. *See id.* at 1210 (reviewing dismissal of federal employee's Title VII action for failure to exhaust administrative remedies as a 12(b)(1), 12(b)(6), and 12(c) dismissal for failure to state a claim); *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989) ("A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12 is a ruling on a question of law and as such is reviewed de novo."), *cert. denied,* ⸺ U.S. ⸺, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Thus, we must treat the district court's dismissal for lack of jurisdiction under Title VII—and particularly, its conclusion that appellant failed to exhaust his administrative remedies—as a legal determination subject to de novo review.[5]

### B

Title VII is implicated in this case by virtue of its relationship to other legislation. In 1978, Congress enacted the Federal Labor–Management Relations Act, 5 U.S.C. §§ 7101–35. This Act governs the methods and manner by which a federal employee with exclusive union representation may challenge an adverse personnel decision by the government agency that employs him. *See* 5 U.S.C. §§ 7103, 7111 (1988); *National Treasury Employees Union v. Federal Labor Relations Auth.*, 774 F.2d 1181, 1184–85 (D.C.Cir.1985). The parties agree that the Act applies to the circumstances of this case.

▮ Under the terms of the Act, a federal employee who alleges employment discrimination must elect to pursue his claim under either a statutory procedure or a union-assisted negotiated grievance procedure; he cannot pursue both avenues, and his election is irrevocable. *See* 5 U.S.C. § 7121(d) (1988). For purposes of determining when an election is made, the Act explains:

> An employee shall be deemed to have exercised his option ... to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, ... whichever event occurs first.

*Id.*

▮ A claimant who elects the applicable statutory procedure must first "consult with an Equal Employment Opportunity Counselor to try to resolve the matter." 29 C.F.R. § 1613.213(a) (1989). If this informal effort fails to satisfy him, then the claimant may file a formal EEO complaint. Only after a final disposition of such a

---

**5.** There is a subtle distinction here worthy of note. We do not recognize administrative exhaustion under Title VII as a *jurisdictional requirement* per se; we treat it as a legal question under the de novo standard because the issue is whether the plaintiff has satisfied a *statutory precondition* to suit. Some courts, however, have treated exhaustion as a jurisdictional requirement. *Compare Stache v. International Union of Bricklayers & Allied Craftsmen,* 852 F.2d 1231, 1233 (9th Cir.1988) ("exhaustion of administrative remedies [under Title VII] is not jurisdictional but is merely a condition precedent to suit which a defendant may waive or be estopped from asserting") (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) and *Boyd v.* *United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir.1985)), *cert. denied,* ⸺ U.S. ⸺, 110 S.Ct. 64, 107 L.Ed.2d 32 (1989), *with Johnson v. Orr,* 747 F.2d 1352, 1356 (10th Cir.1984) (dismissing Air Force employee's handicap discrimination suit on grounds of inexhaustion and noting that, in the Tenth Circuit, "exhaustion of administrative remedies is a jurisdictional prerequisite" for such suits) (citing *Sampson v. Civiletti,* 632 F.2d 860, 862 (10th Cir.1980) and *Bragg v. Reed,* 592 F.2d 1136, 1138 (10th Cir.1979)); *see also United States v. California Care Corp.,* 709 F.2d 1241, 1248 (9th Cir.1983) (noting that a statutorily created exhaustion requirement is "a precondition to federal court jurisdiction" whereas a judicially created exhaustion requirement is a rule of discretion).

formal complaint can the claimant seek judicial review; the availability of such review is governed by Title VII. *See* C.F.R. § 1613.281 (1989); 42 U.S.C. § 2000e–16(c) (1988).[6]

In conformity with this statutory scheme, Air Force regulations provide:

> a. Before a formal complaint can be filed, the complainant must first present it as an informal complaint to an EEO counselor or a chief counselor within 30 calendar days from the date the alleged offense or the personnel action took place....
>
> b. When an employee files an informal complaint, he or she has initiated action under this regulation and cannot then choose to file a grievance on the same allegations of discrimination under a negotiated grievance procedure.... If the complainant chooses to file the complaint under this regulation, the counselor will then proceed with the initial interview. However, if the complainant has already filed an appeal to the MSPB or a written grievance under the negotiated procedure on the same issues, the counselor will not accept an informal complaint under this regulation.

Air Force Regulation ("A.F.R.") 40–1613, ¶ 2–2 (1981).

The first step that Edward Vinieratos ever took in pursuit of his claims was the filing of an informal EEO complaint on February 27, 1987. By virtue of that act and under the terms of A.F.R. 40–1613, he thereby irrevocably elected to adjudicate his claims through the statutory EEO procedure.[7] Having opted initially to pursue relief through the EEO process, appellant was committed. Abandonment of that process in order to pursue another avenue of relief constituted a failure to exhaust the one appropriate administrative remedy he had selected. *See Smith v. Kaldor*, 869 F.2d 999, 1003–04 (6th Cir.1989); *Jones v. Department of Health & Human Servs.*, 622 F.Supp. 829, 831–32 (N.D.Ill.1985).

As the Air Force argues, however, appellant did not merely abandon the EEO process. He also obstructed that process. On March 20, 1987, after twice supplementing his informal EEO complaint, appellant attempted to take the first step in the negotiated grievance procedure. Although he expressed a desire to place primary reliance on the EEO process when he initially filed his informal EEO complaint, he expressed a contrary desire when, in a note dated June 11, 1987, he informed the EEO counselor of his intention to stay those proceedings temporarily in order to see what might happen under the "IG" procedure. Three weeks later, according to the EEO counselor's records, appellant once again requested time to "wait and see" before having to file a formal EEO complaint.

During the latter part of 1987, appellant focused his energies almost entirely upon the negotiated grievance procedure and continued to neglect the EEO process. In particular, during the month of October, he filed four grievances under the union-assisted system and concomitantly failed to appear for a scheduled final interview with his EEO counselor.[8] According to the EEO

---

**6.** For this purpose, "final disposition" means either (a) adoption by the relevant government agency of the EEO counselor's final report, (b) a final decision by the EEOC, if the claimant appeals to the EEOC, or (c) passage of 180 days without receipt of a final decision by either the relevant agency or the EEOC. *See* 29 C.F.R. §§ 1613.217, 1613.281 (1989).

**7.** The Air Force points out that 29 C.F.R. § 1613.219(b), which was promulgated on October 30, 1987, states that "'an election pursuant to this paragraph ... is indicated only by filing a formal *complaint in writing*. Use of the pre-complaint process as described in section 1613.213 does not constitute an election for the purpose of this section.'" Brief for Appellee at 22 (quoting 29 C.F.R. § 1613.219(b) "Supplemental Addendum" at 44) (emphasis in original). However, appellant initiated his informal EEO proceedings several months before promulgation of this regulation. The terms of A.F.R. 40–1613 therefore govern the determination of whether and when appellant made an irrevocable election.

**8.** The "final interview" is of critical importance to the EEO procedure. During that interview, the EEO counselor is required to provide the complainant with written notice of his right to file a formal discrimination complaint "at any time up to 15 calendar days after receipt of the notice." 29 C.F.R. § 1613.213(a) (1989). If timely filed, a formal complaint starts the running of the time period within which the em-

counselor's records, he then failed to return messages left on his telephone answering machine on three different occasions.

■ Appellant did not reactivate the EEO process until January 21, 1988, when he finally filed a formal EEO complaint. Even then, however, his energies did not remain focused on the EEO process for long. On March 10, 1988, appellant filed an MSPB appeal to challenge the Air Force's removal decision. Although the Air Force arguably erred in informing appellant that such an appeal was appropriate, rather than point out this possible error, appellant, who clearly was aware of it, tried to capitalize upon it.[9] The record reflects that he handled his appeal in a manner that wholly obstructed both the previously initiated EEO efforts and the MSPB's efforts. In April, appellant twice wrote to his EEO counselor to express his desire that the EEO proceedings "defer to the MSPB proceedings." In early May, however, he filed yet another formal EEO complaint and then requested that the MSPB proceedings defer to the EEO proceedings.

Viewed in isolation, any one of appellant's acts alone may not suggest abandonment of his original EEO election, but the overall pattern of his conduct clearly does. The administrative record in this case chronicles the efforts of a litigant who sought to pursue as many avenues of relief as possible, hoping to stay proceedings in one forum when the prospects for relief appeared brighter in another, but acting to revive what he formerly put on hold when the effort of the moment appeared on the verge of a dead end. Under such circumstances, we cannot say that appellant has satisfied what the Supreme Court has described as the "rigorous administrative exhaustion requirements" of Title VII. *Brown*, 425 U.S. at 833, 96 S.Ct. at 1968.

Previous decisions by this court and others have held that abandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review. For example, in *Rivera v. United States Postal Service*, 830 F.2d 1037 (9th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988), this court affirmed dismissal of an employment discrimination action brought by a federal employee who had written to the EEOC to

---

ploying agency must reach its final decision and, thereafter, the time period within which the complainant must file his action in federal court, if he seeks to obtain judicial review. *See id.* §§ 1613.214(a)(3), 1613.281.

9. According to one federal regulation, when a complainant files an MSPB appeal in a "mixed case" and that case is already the subject of an ongoing EEO proceeding, the relevant government agency "shall so advise the MSPB and request that the MSPB dismiss the appeal without prejudice and, thereafter, the agency shall process the complaint [through the EEO mechanism]." 29 C.F.R. § 1613.405(b) (1989); *see id.* at § 1613.402(a) (defining "mixed case complaint"). Under this regulation, it appears that even after his removal, appellant's sole avenue of relief continued to be the EEO process, the administrative option that he originally elected. The Air Force, therefore, appears to have erred in suggesting that an MSPB appeal would lie at this stage.

The error, however, is not so obvious. The scheme envisioned under the foregoing regulation appears to conflict with the scheme envisioned under the two regulations cited by the

Air Force in its EEO dismissal notice of June 27, 1988. *See supra* note 2 (discussing 29 C.F.R. §§ 1613.403 and 1613.406(a)(2) and the Air Force's reliance thereon). Under the latter scheme, cancellation of appellant's EEO complaints upon his filing of an MSPB appeal seems wholly proper.

Our holding does not require us to attempt to resolve this apparent conflict. Under either regulatory scheme, it is clear that only one administrative proceeding may proceed at a time; a complainant cannot simultaneously seek a remedy under both the EEO and the MSPB regimes. The record reveals that appellant knew that this was so long before he ever filed his MSPB appeal. Indeed, appellant expressly alleged that his case was "a mixed case" in each of the two formal EEO complaints that he filed on January 21, 1988. *See supra* note 2. By virtue of that allegation, he demonstrated his knowledge of the "mixed complaint" rule and his awareness of the requirement that a complainant may only proceed down one administrative avenue at any given time. Even if the Air Force did err, therefore, appellant was not prejudiced thereby. He knew that an election was required, and yet he attempted to proceed in two or three fora at once.

request "cancellation" of his administrative appeal before filing suit. The court explained that

the path of the law laid out by other circuits is contrary to Rivera's position. The view has been taken that once a party appeals to a statutory agency, board or commission, the appeal must be "exhausted." To withdraw is to abandon one's claim, to fail to exhaust one's remedies. Impatience with the agency does not justify immediate resort to the courts. We think this rule is sound.

830 F.2d at 1039 (citations omitted).

Similarly, in the widely cited case of *Purtill v. Harris*, 658 F.2d 134 (3d Cir.1981), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983), the Third Circuit affirmed dismissal of a suit brought under the Age Discrimination in Employment Act, which also requires claimants to elect one of two alternative avenues of relief. Purtill had "attempted in count one [of his complaint] to pursue both routes simultaneously." 658 F.2d at 138. In the course of affirming, the court wrote:

[W]e note pragmatic, prudential reasons for [an exhaustion] requirement. Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation.

*Id.*

The Seventh Circuit's recent decision in *McGinty v. United States Department of the Army*, 900 F.2d 1114 (7th Cir.1990), is even more on point. Like the present case, *McGinty* involved the filing of a discrimination claim by the civilian employee of a military department. In dismissing the complaint for lack of subject-matter jurisdiction, "[t]he district court held that once a party has chosen the administrative remedy for an age discrimination claim, that

remedy must be exhausted prior to filing a complaint in the district court." 900 F.2d at 1115. Upholding that decision, the court of appeals explained:

The question here is whether the claimant may begin in the administrative procedure and before it is completed, abandon it for a suit in federal court. While the statute and regulations do not explicitly answer this question, we agree with the circuits that have found administrative remedies, once initiated, must be exhausted before a suit may be filed.

*Id.* at 1117 (citations omitted); *cf. Stevens v. Department of Treasury*, ——— U.S. ———, 111 S.Ct. 1562, 1569, 114 L.Ed.2d 1 (1991) (Stevens, J., dissenting from Court's refusal to reach exhaustion question in an ADEA action and noting that ADEA, unlike Title VII, contains no express administrative exhaustion requirement).

Other courts have reached a similar conclusion where the claimant has failed to cooperate with administrative procedures. In *Johnson v. Bergland*, 614 F.2d 415 (5th Cir.1980), a federal employee alleged racial discrimination in violation of Title VII, but "his administrative complaint was vacated because he failed to comply with the valid administrative requirement that he make his generalized complaints more specific." 614 F.2d at 417. The court of appeals held that "the plaintiff's suit was properly dismissed for this failure to pursue and to exhaust ... administrative remedies." *Id.* In *Jordan v. United States*, 522 F.2d 1128 (8th Cir.1975), an Army employee's allegation of discrimination was dismissed on grounds of inexhaustion on account of his refusal to cooperate with the hearing officer. The court there noted:

Implicit in the scheme of attempted control of the evil of discrimination by administrative and judicial machinery is a degree of cooperation from the complaining party. A full development of the pertinent facts cannot be had without disclosure by the aggrieved employee of the facts serving as a basis for his complaint. [The hearing examiner's] purpose [i]s investigative. But this initial step in the administrative process was

never allowed to function. The investigation of both the plaintiff's complaint concerning his one-day suspension, as well as the discrimination allegedly practiced against him, ... was effectively prevented by his refusal to cooperate therein.

522 F.2d at 1131; *see also Steele v. Tennessee Valley Auth.*, 429 F.Supp. 1051 (N.D. Ala.), *aff'd mem.*, 544 F.2d 516 (5th Cir. 1976); *Mackay v. United States Postal Serv.*, 607 F.Supp. 271 (E.D.Pa.1985) (both dismissing complaints on grounds of inexhaustion due to plaintiff's failure to cooperate at the administrative level).

These cases stand for the eminently logical proposition that an administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts. We find application of that proposition to the immediate case quite sound. The law requires an aggrieved federal employee to elect one exclusive administrative remedy and to exhaust whatever remedy he chooses. When a federal employee obstructs the smooth functioning of a properly elected administrative process and abandons that process to pursue a remedy elsewhere, he fails to exhaust his chosen remedy and thereby forecloses judicial review.

### C

█ As one of its alternative grounds for dismissing appellant's complaints, the district court ruled that appellant improperly named the Air Force—rather than the Secretary of the Air Force—as his adverse party. Title VII requires that in a civil action alleging employment discrimination by the government, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c) (1988).

In his original complaint, Vinieratos did not name the Secretary of the Air Force as his adverse party. Rather, he directed his complaint against the "United States Air Force, a Military Department of the United States of America, *through Edward C. Aldridge, Jr., Secretary of the Air Force.*"

Complaint, *Vinieratos v. United States Air Force*, No. 88–4015 (C.D.Cal. June 30, 1988) (emphasis added). The parties thus dispute whether this designation is sufficient to satisfy Title VII's requirement. In light of our holdings in Parts III–A and III–B, however, we need not resolve this dispute, and we therefore decline to do so.

### D

Finally, it would be inappropriate to conclude our discussion of Title VII without briefly responding to the dissent. The dissent contends that the formal EEO complaints which Vinieratos filed in January 1988 were not "mixed case complaints" and that a proper reading of the regulations suggests that the MSPB action was properly commenced and improperly dismissed. *See post* at 775–776. In our dissenting colleague's view, therefore, fault ultimately lies with the MSPB. We disagree with this analysis for four reasons.

First, Vinieratos himself characterized the January 1988 EEO complaints as mixed case complaints, and both parties proceeded on that understanding. Second, Vinieratos himself has never contended that the MSPB dismissal was inappropriate or that the MSPB was at fault. Indeed, he has expressly agreed with our conclusion that he irrevocably elected the EEO process and that whatever other proceedings he may have initiated should be deemed subordinate to that process. Third, even if our dissenting colleague is correct that the MSPB had proper administrative jurisdiction when Vinieratos filed his MSPB appeal on March 10, 1988, that observation in no way rebuts our conclusion that Vinieratos obstructed and ultimately abandoned the administrative process. On May 5, 1988, two months after he filed his MSPB appeal, Vinieratos filed his *third* formal EEO complaint, and on the following day, he expressly requested that the MSPB defer to the EEO system. The dissent is therefore in the awkward position of suggesting that the MSPB erred to the appellant's detriment when it honored his request.

Finally, we respectfully disagree with the dissent's suggestion that federal jurisdiction lies when the administrative process fails to help a complainant and "the only body that is left to straighten out the mess is the federal judiciary." *Post* at 776. Where, as here, the complainant has only himself to blame for the absence of an administrative ruling on the merits of his claim, it is fair to conclude that he has failed to comply with the administrative exhaustion requirement. It is not the role of the federal judiciary to straighten out a mess that is the complainant's own doing.

## IV

Our conclusion that the district court lacked jurisdiction under Title VII does not end our inquiry. Appellant has also alleged jurisdiction under three other statutes, including the Rehabilitation Act of 1973. We conclude, however, that these allegations of jurisdiction are similarly unavailing.

In 1975, the Supreme Court expressly held in *Brown* that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. at 835, 96 S.Ct. at 1965. Relying on that decision, this court held in *Boyd v. United States Postal Service*, 752 F.2d 410 (9th Cir.1985), that the Rehabilitation Act of 1973 does not establish an alternative route to judicial review for litigants who claim to have suffered from handicap discrimination. We explained in *Boyd* that although Title VII itself explicitly outlaws discrimination only on the basis of race, religion, sex, and national origin, there was no reason to believe that the holding of *Brown* did not also extend to cases of handicap discrimination. *Boyd*, 752 F.2d at 413–14 (citing *Brown* ). As we said then:

> Like the Seventh Circuit, we "cannot believe that, given the *Brown* decision, Congress would have wanted us to interpret the [Rehabilitation] Act as allowing the handicapped—alone among federal

employees or job applicants complaining of discrimination—to bypass the administrative remedies in Title VII."

*Id.* at 414 (quoting *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir.1984)).[10]

Under *Boyd*, therefore, a federal employee who alleges employment discrimination on the basis of a handicap must exhaust the administrative remedies available under Title VII; Title VII provides the exclusive channel by which such allegations may be heard in federal court. *Id.* at 413–14. Our holding that appellant failed to exhaust those remedies forecloses any claim to jurisdiction under the Rehabilitation Act.

## V

Appellant has also alleged jurisdiction under the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7702–03. Whereas Title VII provides for judicial review of claims previously shepherded through the EEO process, the Civil Service Reform Act authorizes judicial review of final decisions by the MSPB. Appellant, therefore, would also like the district court to review his MSPB claims.

Our prior decisions have not applied the *Brown* rule to cases arising under the Civil Service Reform Act. Unlike the Rehabilitation Act, the Civil Service Reform Act was passed *after* the Supreme Court's decision in *Brown*, so the rights and remedies that it established were not part of the legal landscape when the Supreme Court announced the exclusivity rule in *Brown*. Indeed, in *Cooper* we recognized—albeit in obiter dictum—that Title VII is *not* the exclusive remedy for federal employees who raise charges of discrimination now that the MSPB procedures are in place. 628 F.2d at 1210–11 n. 3 ("After this case arose, Congress provided an alternative remedy for federal employees in the Civil Service Reform Act of 1978. Now they

---

**10.** As the Seventh Circuit also noted in *McGuinness,* the jurisdictional grant in the Rehabilitation Act specifically incorporates the "'remedies, procedures, and rights'" set forth in Title VIII—an observation that lends further support

for an application of the *Brown* rule to cases involving handicap discrimination. *McGuinness,* 744 F.2d at 1319 (quoting 29 U.S.C. 794a(a)(1)).

may proceed either under [Title VII] or by filing a complaint with the Merit Systems Protection Board.") (citations omitted); *see also* B. Schlei & P. Grossman, *Employment Discrimination Law* 1190–96 (2d ed. 1983) (explaining a federal employee's alternative options under the EEO and MSPB procedures).

Nonetheless, we conclude that jurisdiction is lacking under the Civil Service Reform Act. Under the terms of that Act, "[a]ny employee or applicant for employment who is adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." 5 U.S.C. § 7703(a)(1) (1988). On the facts of this case, appellant cannot claim to have been "adversely affected or aggrieved" by the MSPB. An administrative law judge dismissed appellant's MSPB action *without prejudice* so that he could continue to pursue a remedy through the EEO process, as he originally elected. Under such circumstances, we conclude that there is no final, appealable MSPB decision.[11] Moreover, not long after he filed his MSPB appeal, appellant himself expressly requested a "deferral of jurisdiction" from the MSPB so that he could redirect his energies to the EEO system. We therefore conclude that appellant voluntarily abandoned the MSPB process as well.

The second provision of the Civil Service Reform Act to which appellant draws our attention is similarly unavailing. *See id.* § 7702. Among other things, that provision explains when judicial review becomes available for an MSPB decision in an action involving allegations of discrimination.

*See id.* § 7702(a)(3) (1988). Section 7703, however, provides that "[c]ases of discrimination subject to the provisions of section 7702 of this title shall be filed under ... the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16(c)) ..., as applicable." *Id.* § 7703(b)(2). Thus, the Civil Service Reform Act specifically incorporates and applies Title VII's jurisdictional provision to those cases that involve charges of discrimination. We have already held that appellant has failed to meet the requirements for jurisdiction under Title VII.

## VI

■ Finally, we hold that there is no independent ground for jurisdiction under 28 U.S.C. § 1331. The petitioner in *Brown* alleged jurisdiction under this statute, and the Supreme Court rejected the claim in that case. *See Brown*, 425 U.S. at 828–29 n. 10, 832–33 & n. 12, 96 S.Ct. at 1965–66 n. 10, 1967–68 & n. 12. A general statute cannot confer jurisdiction when a more specific statute explicitly denies it. *See Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). Indeed, the administrative exhaustion requirements in Title VII and the Civil Service Reform Act would have no effect if a claimant could be heard in federal court under section 1331 directly.

## VII

One final matter deserves comment. Like the court below, we have not seen fit to distinguish between appellant's twin complaints for purposes of adjudicating these appeals. The complaints are identical

---

**11.** We reject any suggestion that the absence of a final, appealable decision can be cured simply by the passage of 120 days from the date on which appellant filed his MSPB appeal. *See* 5 U.S.C. § 7702(e)(1)(B) (1988) (automatically conferring jurisdiction on the courts if 120 days pass without a judicially reviewable action by the MSPB). The "120–day rule" was designed to prevent the MSPB and its administrative law judges from dragging their feet and from effectively precluding judicial review; it is not an escape valve by which claimants who abandon the administrative process may nonetheless obtain a hearing in federal court. To read the 120–day rule so broadly would eviscerate the exhaustion requirement so that the mere passage of time would be the only precondition to judicial review. *Cf. Munoz v. Aldridge*, 894 F.2d 1489, 1493 (5th Cir.1990) ("notwithstanding the passage of 180 days, plaintiffs who resort to the administrative process [under Title VII] but do not cooperate in the proceedings can thereby fail to exhaust their administrative remedies").

We offer this observation only because appellant's sole reason for filing his second and nearly identical complaint in the district court was apparently his belief that there might not be jurisdiction for the first one under the 120–day rule but that there would be such jurisdiction for the second.

in all material respects, and any distinction would be artificial. Nonetheless, because we can address the merits of all of appellant's arguments under his first appeal (No. 89–55718), we properly affirm with respect to the second (No. 89–55719) on grounds of issue and claim preclusion.

## VIII

In light of the foregoing, we hold that appellant has failed to exhaust his administrative remedies. The administrative mechanisms established by Congress under the Civil Rights Act, the Civil Service Reform Act, and the Federal Labor–Management Relations Act were all specially designed to address the sorts of claims that appellant has raised here. Administrative law judges and the MSPB; EEO counselors and the EEOC; and union and management representatives negotiating under a collective bargaining agreement all have a measure of expertise and familiarity with employment discrimination disputes that federal judges cannot readily match. For that reason, the law requires that claimants in such disputes seek an administrative resolution at the hands of these experts before filing their claims in federal court. The law further requires that claimants in such disputes exhaust whichever of these alternative administrative remedies they may properly elect to pursue. Appellant has failed to satisfy this latter requirement by virtue of his obstruction and abandonment of the EEO process, the first administrative remedy that he elected.

AFFIRMED.

RYMER, Circuit Judge, dissenting:

I respectfully dissent from part III of the majority's opinion because I believe that neither of the formal EEO complaints Vinieratos filed in January 1988 was a "mixed case complaint." Once properly characterized as simply a "complaint," the chain of events which followed leads me to conclude that he exhausted administrative remedies. Therefore I would reverse.

The regulations define "mixed case complaint" as "[a] complaint of employment discrimination filed with a federal agency ... related to, or stemming from an action taken by an agency against the complainant, which action may be appealed to the MSPB." 29 C.F.R. § 1613.402(a). When Vinieratos filed his formal EEO complaint, there had not been such an agency action because the Air Force had only *proposed* a removal, and it was not until later that it actually removed him. Instead, Vinieratos's January complaint was simply a "complaint," which is "a formal complaint of discrimination," 29 C.F.R. § 1613.402(c), regardless of how he labeled it.[1]

Because Vinieratos filed a "complaint" on the proposed removal, 29 C.F.R. § 1613.406(a)(2) controlled his case. That regulation provides:

> If, following a complaint on a proposal, the complainant subsequently files an appeal with the MSPB on the subsequent agency decision resulting from that proposal, the agency shall cancel the complaint on the proposal. The complainant shall be advised by the agency that any allegations of discrimination contained in that complaint should be raised with the MSPB, in connection with the pending appeal.

His case was *not* controlled by 29 C.F.R. § 1613.405(b). That regulation provides that "[i]f the mixed case complaint was filed first, the agency shall ... request that the MSPB dismiss the appeal without prejudice and, thereafter, the agency shall process the complaint." Because Vinieratos did not file a "mixed case complaint" before going to the MSPB, subsection 1613.405(b) was not applicable. Therefore, the Air Force's decision to cancel his complaints was justified because it was based,

---

1. That Vinieratos labeled his EEO complaints "mixed case complaints" is immaterial. It is not an assertion of fact which binds him because the proper labeling of the complaints is a legal, not a factual, conclusion. Vinieratos's characterization does not bind the court any more than a party's assertion that something is a "mixed question of fact and law" obligates the court to agree.

as it should have been, on subsection 1613.-406(a)(2).[2]

The real problem, then, is that under the regulations the *MSPB* should not have dismissed his appeal. The MSPB should have retained jurisdiction over the case, and the allegations in Vinieratos's EEO complaints should have been incorporated into his MSPB appeal.

There does not appear to be anything untoward about Vinieratos's appeal to the MSPB. Subsection 1613.406(a)(2) suggests that it is entirely proper for an employee to file an MSPB appeal from an action even if the employee had previously filed an EEO complaint. Otherwise, if the EEO complaint constitutes an irrevocable election (over the MSPB route), the regulations would presumably require that the MSPB appeal be dismissed in favor of the EEO proceeding rather than the other way around. *See* 29 C.F.R. § 1613.406(a)(2). Section 1613.403 is also not to the contrary. It only provides that an employee may not file both a mixed case complaint and an MSPB appeal. But Vinieratos filed a "complaint," not a "mixed case complaint," before going to the MSPB.

In addition, that the Air Force told Vinieratos he could appeal his removal through an MSPB appeal or the grievance procedure (omitting the EEO route) is not insignificant. It indicates that Vinieratos did not "abandon" the EEO process or fail to cooperate. Indeed, the MSPB rested its decision to dismiss his appeal on the conclusion that Vinieratos had not knowingly elected to pursue an MSPB appeal rather than an EEO complaint. Vinieratos filed his May 5, 1988 EEO complaint because he was aware that the MSPB planned to dismiss his appeal on that basis. The Air Force then rested its decision to cancel the EEO complaints on the inconsistent conclusion that Vinieratos had in fact irrevocably elected the MSPB procedure. Because the Air Force and the MSPB reached different conclusions about which procedure Vinieratos had elected, they squeezed him out of the administrative process altogether.

It is unclear what more Vinieratos could have done. He had final decisions on both his MSPB appeal and his EEO complaints, so he logically came to federal court. He did not short-cut the process and therefore did not "abandon" his administrative remedies. Theoretically, perhaps, Vinieratos could have gone back to the MSPB after having his EEO complaints cancelled. But that does not seem to be a viable option because the MSPB had already entered its final determination that Vinieratos had irrevocably elected the EEO process. The MSPB might have been open to reconsideration, but simply because the Air Force viewed the situation differently does not necessarily mean that the MSPB would have changed its mind (it presumably would have just figured that the Air Force got it wrong and would have stuck with its decision).

Thus, Vinieratos's only remaining solution was to come to federal court. He had decisions from both administrative bodies saying that they couldn't help him. One of them had to be wrong, and the only body that is left to straighten out the mess is the federal judiciary. For these reasons, I believe that Vinieratos exhausted his administrative remedies, and accordingly would hold that the district court should not have dismissed for lack of jurisdiction.

---

2. The May 5 complaint *was* a mixed case complaint, which was filed after the MSPB appeal.

That complaint was justifiably cancelled under 29 C.F.R. § 1613.405(b).