The DEPARTMENT OF VETERANS AFFAIRS MEDICAL CENTER, LONG BEACH, CALIFORNIA, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent;

American Federation of Government Employees Council 33, AFL–CIO Local 1061, Respondent–Intervenor.

FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,

v.

The DEPARTMENT OF VETERANS AFFAIRS MEDICAL CENTER, LONG BEACH, CALIFORNIA, Respondent.

Nos. 91–70640, 91–70712.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1993.

Decided Feb. 25, 1994.

---

Bruce G. Forrest, United States Department of Justice, Washington, D.C., for petitioner Department of Veterans Affairs Medical Center.

Frederick M. Herrera, Federal Labor Relations Authority, Washington, D.C., for respondent Federal Labor Relations Authority.

Mark D. Roth, Charles A. Hobbie, and Alexia McCaskill, American Federation of Government Employees, AFL–CIO, Washington, D.C., for respondent-intervenor American Federation of Government Employees, AFL–CIO, Local 1061.

Before FARRIS, NORRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

A Department of Veterans Affairs medical center challenges two determinations by the Federal Labor Relations Authority ("FLRA") that it committed unfair labor practices. We uphold both determinations.

In preparation for the Merit Systems Protection Board ("Board") hearing of a member of Local 1061 of the American Federation of Government Employees ("the Union"), an attorney representing the Department of Veterans Affairs Medical Center of Long Beach, California ("the Hospital") interviewed, by telephone, several Union members who were potential witnesses at the Board hearing. Although the Union was representing the employee whose case the Board was to consider, the Hospital did not give the Union any notice of the interviews. One of the bargaining unit employees interviewed told her supervisor that she did not wish to be questioned, and was told that she had no choice. She was not told that she could refuse to answer the Hospital attorney's questions without penalty of reprisal.

In a decision and order dated August 27, 1991, the FLRA concluded that the Hospital committed an unfair labor practice under 5 U.S.C. § 7114(a)(2)(A) when it failed to give the Union notice of the interviews, and committed a second unfair labor practice under 5 U.S.C. § 7116(a)(1) when it failed to advise

the reluctant employee that she could refuse to be questioned. We hold that the FLRA did not act arbitrarily or capriciously with respect to either conclusion, deny the Hospital's petition to review its order, and grant the Union's and the FLRA's cross-application to enforce the FLRA's order.

## I.

In January, 1988, the Hospital fired Gary Dekoekkoek, a Union member, for failing to keep his medical supplies cart clean and for being late to work. He appealed his termination to the Board. The Union represented him throughout the discharge proceedings. The Hospital was represented by staff attorney Patricia Geffner.

Geffner prepared for the Board hearing by conducting telephonic interviews with several Union employees concerning the events that led to Dekoekkoek's termination. She spoke in all to seven employees, some for up to an hour. The conversations concerned Dekoekkoek, his immediate supervisor, and the incident that led to his termination. Two employees spoke to her from the office of their supervisors. The record does not reveal the circumstances in which the other employees were asked to speak to Geffner. No Union representative was notified or invited to be present at any interview.

One of the employees Geffner spoke to was Stella Smith, who worked in the same department as Dekoekkoek. Smith was called to the office of her second-level supervisor, who asked her whether she wanted to be questioned about Dekoekkoek. She told the supervisor that she did not want to become involved, and was excused. Later that day, however, the supervisor called her in again and told her that she was required to answer Geffner's questions. The supervisor telephoned Geffner from his office, handed the receiver to Smith, and left the room. Geffner spoke with Smith about Dekoekkoek for approximately five minutes.

Before the Board hearing, Geffner called Dekoekkoek's Union representative, told him of her interviews, and furnished him with the names of the employees with whom she had spoken. The Union filed charges with the FLRA, which issued a complaint alleging that: 1) the failure to give the Union representative the opportunity to be present at the interviews violated 5 U.S.C. § 7114(a)(2)(A), which expressly calls for such representation during formal discussions concerning a grievance; and 2) the Hospital's failure to assure Smith that she would not be subject to reprisal if she refused to participate in the interviews violated 5 U.S.C. § 7116(a)(1), which declares an unfair labor practice an agency's actions in coercing an employee in the exercise of his or her rights under the Federal Service Labor–Management Relations Statute ("the Statute").

A hearing was held on the charges before an Administrative Law Judge ("ALJ"). The ALJ decided in favor of the Union on the first issue and in favor of the Hospital on the second. Both parties appealed the ALJ's decision. On appeal, the FLRA ruled in favor of the Union on both issues. The Hospital now petitions for review of the judgment, and the FLRA and the Union cross-apply for enforcement of the order.

## II.

Congress enacted the Statute, 5 U.S.C. § 7101 *et seq.*, to grant public employees the right to "organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them." 5 U.S.C. § 7101(a)(1). It created the FLRA to administer the Statute. *See* 5 U.S.C. § 7105. We have jurisdiction to review the FLRA's decisions under 5 U.S.C. § 7123. That provision directs us to conduct our review in accordance with 5 U.S.C. § 706, which in turn permits us to set aside the agency's action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bureau of Land Management v. FLRA*, 864 F.2d 89 (9th Cir.1988) (citing *Am. Fed'n of Gov't Employees v. FLRA*, 802 F.2d 1159, 1161 (9th Cir.1986)). If the agency's action is " 'none of the above,' " we must affirm the FLRA's decision and order. *Dep't of Veterans Affairs, Dep't of Veterans Affairs Medical Center, Denver, Colorado v. FLRA & Am. Federation of Gov't Employees, Local 2241*, 3 F.3d 1386, 1389 (10th Cir.1993) ("*Lo-*

cal 2241") (citing *United States Dep't of Energy v. FLRA,* 880 F.2d 1163, 1165 (10th Cir.1989)).

## III.

■ We begin our analysis by considering the statutory framework in which this case arose. The Statute seeks to balance the interests of management against those of labor. It gives the edge to management during investigations of alleged misconduct on the part of bargaining unit employees. During that time, employees have a duty to account for their performance and conduct, *Portsmouth Fed. Employees Metal Trades Council and Portsmouth Naval Shipyard,* 34 FLRA 1150, 1990 WL 123977 (FLRA) (1990), and management need not notify the union of the interviews it conducts with union members and offer its representative an opportunity to be present. *Cf.* 5 U.S.C. § 7114(a)(2)(A) (giving the union the right to be present at formal discussions concerning a grievance).

■ When management decides that it knows all the necessary facts, however, it ends its investigation. It may then decide to discipline the union member whom it investigated. If, after the employee is notified that he is being disciplined, he files a grievance, the balance of interests shifts. At that point, the Statute gives the union the right to be present at all formal discussions concerning the grievance. *Id.*

Sound policies support shifting the balance at that point. Before disciplinary action is taken, the employer must be given an opportunity to uncover the facts. Only after a thorough investigation can the employer know whether disciplinary action is warranted. For that reason, the Statute gives the employer the advantage at the investigatory stage—although even at that stage the employee under investigation may have a union representative present if he so wishes. In any event, it is assumed under the statute that the employer will complete the investigation *before* deciding to discipline an employee, and that when it does so it will have determined the relevant facts. Such an assumption is reasonable. If the employer has not determined the facts, disciplinary action is certainly unjustified. This is true with respect even to minor disciplinary matters, but it is particularly true with respect to termination, the disciplinary action at issue in this case. An employee who is fired from his or her job is subjected to economic capital punishment. The discharged employee may have to explain to a second employer that a first employer found him undesirable. His chances of finding work again are problematic, especially where, as here, he performs unskilled or semi-skilled labor. After the employer's investigation is complete, therefore, and the decision to discipline the employee has been made, the reason for affording the employer a procedural advantage disappears. For that reason, once the employee has filed a grievance, the Statute affords the union the right to be present at all formal discussions regarding the grievance. This requirement allows the union to protect its members against intimidation and coercion, and allows it to participate fully in a proceeding that may affect all bargaining unit employees, not just the one being disciplined. *See Nat'l Treasury Employees Union v. Fed. Labor Relations Authority,* 774 F.2d 1181, 1188 (D.C.Cir.1985) ("*NTEU I* ").

Some may argue that Congress did not choose the best point at which to shift the balance between the interests of management and those of labor. That argument is irrelevant here. Our task is not to rewrite the Statute, but rather to determine whether the FLRA interpreted it in an arbitrary and capricious manner.

## IV.

■ We now consider whether the FLRA acted arbitrarily and capriciously in determining that the Union had the right under § 7114(a)(2)(A) of the Statute to be present during Geffner's telephonic interviews of Union employees.[1]

---

**1.** The Hospital contends that our review should be de novo, because the FLRA's current interpretation of 5 U.S.C. § 7114(a)(2) is based on an out-of-circuit case, *NTEU I,* and because, before *NTEU I* was decided, the FLRA interpreted the statute differently. *Compare Internal Revenue*

Section 7114(a)(2)(A) grants a union the right to be represented "at any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment." 5 U.S.C. § 7114(a)(2)(A). The Hospital contends that the interviews in this case were not "formal discussions" and did not concern a "grievance" within the meaning of the statute.

## A. Formal Discussion

■ Generally speaking, the scope of formality within the meaning of the Statute is extremely broad. A meeting is formal unless it is a "casual conversation or a conversation that followed from an impromptu meeting." *McClellan* at * 9. *See also Local 2241*, 3 F.3d at 1389 (a meeting is formal unless it is a "spontaneous or chance meeting[ ] in the workplace"); *NTEU I*, 774 F.2d at 1190 (to escape formality, a meeting must be an "impromptu gathering"). Within that broad compass, whether a discussion is "formal" depends on the totality of the circumstances. The FLRA has commonly looked to a number of specific factors to determine formality, such as the level in the management hierarchy of the person who called the discussion; whether other management representatives attended the discussion; where the discussion took place; how long it lasted; how the employee was summoned to it; whether there was a formal agenda; whether

the employee was required to attend; and whether the employee's name and comments were transcribed. *United States Dep't of Labor, Chicago, Ill. v. Am. Federation of Gov't Employees, Local 648*, 32 FLRA 69, 1988 WL 212939 (FLRA) at * 4–5 (1988) ("*Chicago*").[2]

■ The Hospital contends that the interviews at issue here were not formal because they were conducted by telephone, because there was no advance announcement or scheduling, and because the employees were left alone in their supervisors' offices while they talked to the Hospital's counsel. The FLRA disagreed, and we affirm.

We note at the outset that these interviews were not impromptu or spontaneous gatherings. Rather, they were planned question-and-answer sessions that the employees were required to attend. Therefore, they fall within the broad meaning of "formality" for the purpose of the Statute. Our inquiry into their formality could end here. However, because the FLRA considers formality under a totality test, we will review the importance of the factors on which the Hospital relies.

The FLRA considered in *McClellan* whether the fact that an interview is conducted over the telephone removes it from the scope of the Statute. It concluded that it does not. *McClellan* at *9. To construe the Statute to exclude telephonic questioning, no matter what other indicia of formality the discussion may have, would be to give the Statute a reading at odds with its plain lan-

*Svc. and Brookhaven Svc. Center*, 9 FLRA 930, 1982 WL 23283 (FLRA) (1982) ("*Brookhaven*"), with *Dep't of Air Force, McClellan Air Force Base v. Am. Federation of Gov't Employees, Local 1857*, 35 FLRA 594, 1990 WL 123216 (FLRA) (1990) ("*McClellan*"). We find this argument unpersuasive. The FLRA is free to change its interpretation of the Statute after reweighing competing statutory policies. *See New York Council, Ass'n of Civilian Technicians v. FLRA*, 757 F.2d 502, 508 (2d Cir.1985), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). The FLRA's current position is both carefully-reasoned and well-established. *See, e.g., McClellan*, 1990 WL 123216 at *8–9 (explaining the FLRA's current interpretation of 5 U.S.C. § 7114(a)(2)). Furthermore, to review de novo any changed agency position is, in effect, to force an agency to adhere to what may be an erroneous view simply to protect the deference it should be accorded in any case. Finally, under *NLRB v. United Food &*

*Commercial Workers Union, Local 23*, 484 U.S. 112, 124 n. 20, 108 S.Ct. 413, 421 n. 20, 98 L.Ed.2d 429 (1987), the consistency of an agency's interpretation is only one factor to be considered in deciding upon the degree of deference of appellate review. Even if we were to agree that the FLRA's changed interpretation should change the scrutiny with which we review its actions, we would not necessarily agree that we owe no deference at all to the agency's decision. In any event, because *NTEU I* is well-reasoned and because the FLRA's adoption of it is persuasive, we attach no significance to the FLRA's earlier lack of consistency in interpreting this provision of the Statute.

2. The agency has emphasized that its list is not exhaustive and that other factors may be applied if they are appropriate to a particular case. *Id.*

guage, the FLRA's decisions, and our obligation to affirm those decisions unless they are arbitrary and capricious. An interview "involves questioning to secure information; obviously, it can be done in an number of different ways by a variety of different people." *Nat'l Treasury Employees Union v. Fed. Labor Relations Authority*, 835 F.2d 1446, 1450 (D.C.Cir.1987) ("*NTEU II*") (discussing the term "examination"). Indeed, the fact that an interview is conducted over the telephone may even increase its formal nature. An interviewer's facial expressions are not visible over telephone, and any silences during questioning are more obvious during a telephonic interview, where the entire focus is on sound, than they might be face-to-face.

The indicia of formality in this case were strong. The interviews were conducted in a supervisor's or second-level supervisor's office, an area removed from the employee's normal work environment. The staff attorney represented a high level of management. The interviews lasted between five minutes and more than an hour. They were planned in advance and concerned only one topic, Dekoekkoek's upcoming Board hearing. Under these circumstances, we do not find arbitrary and capricious the FLRA's determination that the interviews were formal. The lack of advance notice to the employees, and the fact that the employees were left alone in their supervisors' offices while they were interviewed, in no way serve to overcome either the deference we owe to the FLRA's determination on this point, or the indicia of formality present in this case. Those indicia strongly rebut any inference of spontaneity that might be raised by the lack of notice and the absence of the supervisors. *See NTEU I*, 774 F.2d at 1190.

In the alternative, the Hospital, relying on *IRS, Fresno Svc. Ctr. v. FLRA*, 706 F.2d 1019 (9th Cir.1983), argues that we should ignore the FLRA's indicia of formality and look instead to what it calls the "informal purpose" of the interviews. [Blue Brief at 13–14 & n. 7]. We decline this invitation for

three reasons. First, the FLRA's indicia of formality provide a method to assess a meeting's formal or informal purpose. Therefore, our discussion above has already carried out the Hospital's request. Second, we are unable to look to the "informal purpose" of the interviews, because their purpose was not informal. Even according to the Hospital's account, the staff attorney "was attempting to gather information as to what potential non-party fact witnesses would say at a [Board] hearing." [Blue Brief at 14]. Preparation for a Board hearing is not an informal goal, and assessing the testimony of potentially adverse witnesses is not an informal undertaking. Finally, the Hospital's reliance on *IRS, Fresno* is misplaced. In that case, we found the meetings informal only because the EEOC regulatory framework that governed the case explicitly characterized them in that way. Under that framework, the employee was required to try to resolve a complaint on an informal basis before filing a formal complaint. *IRS, Fresno* at 1023–24. Here, however, no comparable regulatory scheme exists. The record reflects no statutory or regulatory framework that either encourages or requires an employee to attempt to resolve complaints informally. Certainly, here, no Board regulation explicitly or implicitly defines the interviews as informal rather than as formal discussions. To the contrary, the interviews were part of the formal grievance procedure. They were not an effort to preempt the formal process, but a step towards, and a part of, the culmination of that process. For these reasons, we find that the FLRA acted within its authority in ruling that the interviews were formal within the meaning of the Statute.

In addition, the Hospital contends that no "discussions" took place. It argues that, under the Statute, "discussion" must be "reasonably understood [to mean] ... negotiation, 'give-and-take,' ... [an] attempt to reconcile a complaint or to otherwise change the status quo." [Blue Brief at 14]. It contends that, because the interviews here were intended merely to gather facts, they were not discussions.[3]

---

**3.** The Hospital did not raise this argument before the ALJ or the FLRA. It is therefore precluded from raising the issue on appeal unless its "failure or neglect to urge the objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c). The Hospital calls no such

Under the Statute, however, "meeting" and "discussion" are synonymous. *Dept. of Air Force Warren Air Force Base, Cheyenne, Wyoming & Am. Federation of Gov't Employees, Local 2354,* 1988 WL 212811 at * 7 (1990) citing *Dep't of Defense, Nat'l Guard Bur., Tex. Adjutant Gen.'s Dep't, 149th TAC Fighter Group, Kelly Air Force Base,* 15 FLRA 529, 1984 WL 35145 (FLRA) (1984) ("*Kelly Air Force Base*") at *3. *Accord, Local 2241,* 3 F.3d at 1389 (citing *Kelly Air Force Base, supra*). Indeed, the FLRA has ruled that even announcements presented by management at gatherings at which union members are not invited to speak are "discussions" within the meaning of the Statute. *Kelly Air Force Base,* 1984 WL 35145 at * 3. Such an interpretation comports with the statutory goal of vindicating a union's independent right to be present so that it may safeguard the interests of all union employees. *Id.*

Under the Hospital's definition, the Statute would not include an interview of any type—whether of a witness or a principal. Management could exclude union representatives merely by structuring its meetings in a question-and-answer format. We reject the Hospital's attempt to limit the rights of labor under the Statute. The FLRA's implicit finding that the interviews in this case were "discussions" within the meaning of the Statute was neither arbitrary nor capricious.

## B. Grievance

The Statute defines "grievance" extremely broadly. It provides that a grievance is "any complaint—

(A) by any employee concerning any matter relating to the employment of the employee;

(B) by any labor organization concerning any matter relating to the employment of any employee; or

(C) by any employee, labor organization, or agency concerning

(i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or

(ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment[.]

5 U.S.C. § 7103(a)(9). In conformance with the language of the Statute, the FLRA reads "grievance" broadly, as encompassing statutory appeals, including appeals to the Board. *Chicago,* 1988 WL 212939 at * 5. *See also NTEU I,* 774 F.2d at 1188 (referring to "the 'all-inclusive' definition of 'grievance' in § 7103(a)(9) and § 7114(a)(2)(A)") (quoting H.R.Rep. No. 1403, 95th Cong., 2d Sess. 40 (1978)).

■ The Hospital contends that the interviews at issue here did not concern a "grievance" because they pertained to a Board hearing rather than to a procedure within the contractual grievance process. Relying on *IRS Fresno,* it argues that, like the EEOC procedure at issue in that case, the Board hearing here "did not involve any aspect of the collective bargaining agreement." *IRS Fresno,* 706 F.2d at 1025. [Blue Brief at 15].

*IRS Fresno,* however, concerned a charge filed under Title VII, a Congressional enactment unconnected to the Statute. The EEOC regulation in *IRS Fresno* established a procedure for handling such charges unconnected to those established by the Statute. In fact, the collective bargaining agreement in *IRS Fresno* explicitly excluded from the grievance procedure claims covered by the EEOC. *Id.* at 1024–25. Here, by contrast, we consider a statute that Congress enacted to implement its finding that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). Here, there is no suggestion that the Union's collective bargaining agreement excludes grievances of the type filed by Dekoekkoek, or proceedings such as those established by the Board.

Moreover, the Board hearing in this case *did* "involve [an] aspect of the collective bargaining agreement." Dekoekkoek initially brought his grievance pursuant to the procedures established in the collective bargaining

circumstances to our attention. Even had the Hospital preserved this issue for appeal, howev-

er, we would have rejected its cramped construction.

agreement. [Tr. at 49–50]. Under the Statute, he was permitted to appeal his removal either under that agreement or to the Board. 5 U.S.C. § 7121(e)(1). He chose to appeal to the Board. Thus, unlike *IRS Fresno*, this case concerns a dispute intimately connected with the Union's collective bargaining agreement.

The language of the Statute is plain: a grievance is "*any* complaint by *any* employee concerning *any* matter relating to the employment of the employee." 5 U.S.C. § 7103(a)(9)(A) (emphasis added). Certainly that applies to any matter arising under the Statute. In *IRS Fresno*, the question was whether the protections of the Statute apply to proceedings conducted by the EEOC. We concluded that they do not, finding that an employee's rights as to EEOC proceedings are established by the EEO statute and accompanying regulations. The question here—whether the protections of the Statute apply to proceedings before the Board—is entirely different. It has been answered in the affirmative by the Tenth and District of Columbia circuits.[4] *Local 2241*, 3 F.3d at 1390–91; *NTEU I*, 774 F.2d at 1184–89. We now join them.[5]

### V.

We turn now to the issue whether the FLRA acted arbitrarily and capriciously in concluding that the Hospital committed an unfair labor practice under § 7116(a)(1) of the Statute when it failed to advise Stella Smith, the employee who did not wish to be questioned, that she could refuse to be interviewed without penalty of reprisal.

■ When management interviews employees "to ascertain necessary facts" in preparation for third-party proceedings, it must provide certain safeguards to protect the employees' rights under § 7102 of the Statute.[6] *Brookhaven*, 1982 WL 23283 at * 3. These safeguards are as follows:

(1) management must inform the employee who is to be questioned of the purpose of the questioning, assure the employee that no reprisal will take place if he or she refuses, and obtain the employee's participation on a voluntary basis; (2) the questioning must occur in a context which is not coercive in nature; and (3) the questions must not exceed the scope of the legitimate purpose of the inquiry or otherwise interfere with the employee's statutory rights.

*Id.* The FLRA does not require an employer to give the *Brookhaven* assurances in every case. Instead, it looks to the circumstances of each case to determine whether the employee submitted to questioning voluntarily. *Warren*, 1988 WL 212811, at * 7. In this way, it can better determine whether the circumstances in which formal discussions occur are coercive. *Id.*

■ Here, the FLRA examined all of the circumstances and found that the reluctant employee, Stella Smith, did not submit voluntarily to Geffner's questioning. It found that Smith initially refused to be questioned, consenting to be interviewed only after her supervisor told her that she "had no choice, that [she] had to be [questioned]." [Tr. 63]. It found that other surrounding circumstances added to the coercive nature of the interview. Smith was not interviewed by her own supervisor, but by Geffner, an attorney who worked at a high level of management and who was based in the Hospital's district

---

**4.** While *IRS Fresno* is not applicable here, we note that the reasoning of the District of Columbia circuit in *NTEU I*, rejecting the *IRS Fresno* analysis, is more persuasive.

**5.** The Hospital additionally argues that a union has no right to be present while management discusses an upcoming Board hearing with an employee because it has no obligation to represent the employee before the Board. We reject this argument. The right of the union is independent of that of the employee, whether or not the employee is represented by the union. As long as no conflict exists between the union's right and that of the employee, the union may not be barred.

**6.** Section 7102 provides, in part:

Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right.

office.[7] Although Smith's supervisor was not present during the interview, the FLRA ruled that this did no more than "temper[ ] ... the coerciveness inherent in the unfamiliar surroundings." [FLRA Decision at 14]. The FLRA concluded that, under these circumstances, the *Brookhaven* safeguards were not met and that the Hospital therefore violated § 7116(a) of the Statute. The FLRA's finding is supported by the record. It is therefore neither arbitrary nor capricious, and we accordingly affirm it.

 The Hospital contends that, *Brookhaven* safeguards notwithstanding, 38 C.F.R. § 0.735–21(f), a Veterans Administration regulation, required Smith to submit to questioning. That regulation requires employees to

> furnish information and testify freely and honestly in cases respecting employment and disciplinary matters. Refusal to testify, concealment of material facts, or willfully inaccurate testimony in connection with an investigation or hearing may be grounds for disciplinary action.[8]

38 C.F.R. § 0.735–21(f). The FLRA determined that the regulation is not applicable here. As it pointed out, the Hospital's regulation subjects an employee to discipline for a refusal to provide information in two circumstances: in connection with an investigation, and in connection with a hearing. Discipline may be imposed if an employee refuses to testify, testifies inaccurately, or conceals material facts. We will examine the two aspects of the regulation in turn.

The first aspect proscribes certain conduct in connection with disciplinary investigations. The Hospital suggests that because employees are required to "testify" they must provide answers to questions asked by investigators at any time during the course of an investigation. We need not consider whether that argument is correct because, as the FLRA noted, by the time Geffner asked to interview Smith the Hospital's investigation was complete. In seeking to question Smith, the Hospital was not conducting an investigation but preparing for a third-party hearing. As we explained above, we must presume that an employer investigates an employee's alleged disciplinary infractions before it fires the employee, not afterwards. *See supra* Part III. Thus, we agree with the FLRA's conclusion that the investigative aspect of the regulation is inapplicable.

The FLRA also ruled that the part of the Hospital's regulation governing employees' responsibilities with respect to hearings does not apply. Again, we agree. The effort to interview Smith did not involve an attempt to obtain her "testimony." Smith did not refuse to testify, either by way of deposition or as an actual witness; she did not testify falsely; nor did she "conceal" material facts. She merely declined to assist a lawyer in the preparation of a case. Smith was not requested to perform any act at, or as a part of, a "hearing." The employees who were questioned by Geffner were not placed under oath, cross-examined, or made subject to penalty of perjury. They were simply asked to provide information to Geffner which might assist her when she presented the hospital's case at a subsequent proceeding. Smith declined to do so. Such a refusal, as the FLRA pointed out, does not subject an employee to discipline under the regulation.

The FLRA's determination is not arbitrary or capricious. Moreover, it avoids a conflict between the Hospital's regulation and the agency's *Brookhaven* safeguards. Indeed, *Brookhaven* itself arose in precisely the circumstances of the case before us. There, as here, the employer sought to interview witnesses between the conclusion of its investigation and the commencement of a hearing. *Brookhaven*, 1982 WL 23283 at *1–2.[9]

---

7. In addition, Smith was asked to speak to Geffner not by her own supervisor, but by a higher-level supervisor. This can only have added to the coerciveness of the surrounding circumstances.

8. "An employee, however, will not be required to give testimony against himself or herself in any matter in which there is indication that he or she may be involved in a violation of law wherein there is a possibility of self-incrimination." 38 C.F.R. § 0.735–21(f).

9. Because the Hospital's regulation is not incompatible with *Brookhaven* in this case, we need not decide which would override the other if they conflicted—for example, if the FLRA asserted that *Brookhaven* applied during the investigative

*Brookhaven* held that such a pre-hearing interview may not be achieved through coercion.[10]

Accordingly, notwithstanding the Hospital's regulation, we affirm the FLRA.

The Hospital's final contention is that the FLRA's interpretation of the regulation is incompatible with *Navy Public Works Center, Pearl Harbor v. FLRA*, 678 F.2d 97, 101 (9th Cir.1982) ("*Pearl Harbor*"). Under *Pearl Harbor*, it argues, an employer has a nonnegotiable right to enforce an employee's duty to account to supervisors for his or her performance.

We note, first, that, in *Pearl Harbor*, "the issue before us [was] whether the FLRA's holding that a proposal ... is procedural under [5 U.S.C. § 7106](b)(2) is 'reasoned and supportable.'" *Id.* at 100 (footnote omitted). That question, and therefore, *Pearl Harbor*'s holding, bears no relation to the issue here.

Moreover, *Pearl Harbor* involved the question whether an employee *suspected* of misconduct could be compelled to cooperate in an *investigation* of that misconduct. 678 F.2d at 99 n. 2. *See also id.* at 101 (stating that the case concerns a targeted employee's "duty to account, *whether generally or in disciplinary investigations*") (emphasis added). Here, however, the issue is whether a *witness* can be compelled to provide information at the *post-investigatory* third-party stage, in order to help the employer prepare for a third-party hearing. *Pearl Harbor*'s discussion regarding the duties of an employee to cooperate when suspected of an improper act tells us little about the obligations of a prospective witness to cooperate, and

certainly nothing about a witness's obligations after the investigation into the improper act has been completed and the government has already taken the disciplinary action it deems appropriate. Whatever the merits of *Pearl Harbor*, therefore, it is of little assistance to us here.

### Conclusion

For the above reasons, we uphold the determinations of the FLRA. As to the first issue, we find that the record fully supports the FLRA's findings that the interviews at issue here were formal discussions that concerned a grievance within the meaning of § 7114(a)(2)(A) of the Statute. Furthermore, the record supports the FLRA's finding that one employee, Stella Smith, did not submit voluntarily to questioning. The cases and regulations on which the Hospital relies pertain to circumstances different than those found here. We accordingly deny the Hospital's petition for review, and grant the cross-applications of the Union and the FLRA for enforcement of the FLRA's order.

**PETITION DENIED; CROSS–APPLICATION GRANTED.**

---

10. The FLRA has also held, under *Brookhaven*, that an employer may not coerce union members into discussing upcoming third-party hearings that involve complaints of unfair labor practices brought by the union against the employer. *See, e.g., United States Dep't of the Air Force, Griffiss Air Force Base, Rome, New York, and Am. Fed'n of Gov't Employees, Local 2612, AFL–CIO* 38 FLRA 1552, 1991 WL 8399 FLRA (1991) (interview of chief steward in connection with hearing on unfair labor practice involving relocation of union office); *Warren*, 1988 WL 212811 (FLRA) (interview of bargaining unit employee in connection with hearing on union complaint that management interfered with its right to picket).